## KELLEY et al. v. BENTON.

(Circuit Court of Appeals, Ninth Circuit. May 26, 1910.)

### No. 1,710.

JUDGMENT (§ 251*)—ON TRIAL OF ISSUES—CONFORMITY TO PLEADINGS.

Where the only issue raised by the pleadings, in an action at law to recover a balance alleged to be due for lumber delivered under a contract, was as to the quantity so delivered, which was of the grade called for by the contract, and the court found the quantity less than alleged and to have been fully paid for by defendants, a further finding that the parties orally agreed to settle in accordance with an estimate to be made by appraisers, and that the appraisers reported a larger quantity to have been delivered, was wholly outside the pleadings and did not warrant a judgment for plaintiff based on such estimate.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. § 251.*]

In Error to the Circuit Court of the United States for the Northern District of California.

Action by T. H. Benton against William E. Kelley and Allan H. Daugharty, partners as W. E. Kelley & Co. Judgment for plaintiff, and defendants bring error. Reversed.

This was an action at law based upon a written contract made in the form of a letter and its acceptance between the defendant in error, who was plaintiff in the court below, and the plaintiffs in error, the defendants there, which contract was made a part of the complaint and is as follows:

"Platteau, Shasta Co., Cal., 5/27/05.

"W. E. Kelley & Co., 901 Chamber Commerce, Chicago, Ill.—Gentlemen: For and in consideration of one dollar ($1.00) to me in hand paid, receipt of which I herewith acknowledge, I hereby offer to sell you all the No. two shop and better California sugar and white pine that I manufacture at my sawmill near Platteau, during the season of 1905.

"All grades mentioned in this contract are the same as per rules adopted Apr. 1st, 1903, by the Cal. Sug. & W. P. Agency.

---

"All lumber to be delivered at Cottonwood, Cal., and piled in some convenient place near the Southern Pacific R. R. for shipment as directed by you.

"The price of above lumber to be twenty-four dollars ($24.00) per M. for all grades.

"The terms of payment to be 60 ds. from shipment or 2 per cent. off for cash (at my option) from face of invoice; cash payments to be made by your San Francisco office drawing sight draft on your Chicago office and remitting same promptly to Bank of Tehama County, Red Bluff, Cal., for credit on my account.

"The sugar and white pine to be delivered separately, also the several thicknesses of each to be delivered separate.

"In the matter of delivery, my teams will, upon arriving with a load at point of delivery present your representative with our shipping tally in duplicate and if said load arrives in apparent good order you are to O. K. one copy and return to us. If for any reasons loads appear damaged or short you to make notation of same on tally that is returned to us. This is for our convenience in keeping a check on our teamsters.

"After lumber is delivered at R. R. by us you are to ship the same within thirty days; as soon as lumber is shipped by you, you are to furnish us promptly with a copy of tally showing the number of feet shipped by your men.

"I am to always have the privilege of keeping an inspector on the ground to keep a check on your inspector if I desire.

"In the event of your not shipping any portion of the above lumber within 30 ds. from the time it is rec'd, you are at my request to make an estimate of said lumber and make settlement for same as per above terms.

"It is understood that the above settlement based on estimates is not to be final, but is subject to adjustment after the final inspection at time of shipment is made by you.

"All lumber is to be delivered by me, dry and in first-class manner.

"All lumber is to be properly edged and otherwise properly manufactured.

"The above proposition does not refer to any stained lumber which I may have; should I have any of such lumber it is subject to further negotiation at the option of both parties.

"All lumber to be manufactured to standard lengths, widths and thicknesses.

"You agree to take all my short clear 5/4, 6/5 & 8/4, 10" and over wide 4 ft. and over long or if 6 ft. 8" or over long it may be 5¼ inches and up wide @ $20.00 per M. at same point of delivery and terms.

"And sugar pine I deliver in excess of 15 per cent. of the total cut, you are to pay me three dollars ($3.00)per M. extra for.

"All lumber to be manufactured as nearly as possible to your trade requirements as you advise us from time to time, but I reserve the right to not cut anything over 3 inches thick, and not to cut over 50 M. 3" and 100 M. 2½" and none over 16 ft. long.

"Yours truly,                                                    T. H. Benton.

"Accepted: W. E. Kelley & Co., by Frank W. Warren."

The complaint alleged the execution of the contract above set out by and between the respective parties on the 27th day of May, 1905, and that in compliance therewith plaintiff delivered to the defendants in the county of Shasta, state of California, sugar and white pine lumber of the grades of No. 2 shop and better, to the extent of 2,297,175 feet, and that the defendants received the same from the plaintiff pursuant to the terms of the contract; that by reason of such sale and delivery the defendants became indebted to the plaintiff in the sum of $55,132.20, of which the defendants only paid $45,164, leaving owing, due, and unpaid from the defendants to the plaintiff therefor the sum of $9,968.20, which indebtedness, it was alleged, was incurred and was and is payable in the state of California. The prayer was for judgment against the defendants for the amount last stated, with interest and costs of suit.

In and by their answer the defendants admitted the making of the contract sued upon, but denied that thereunder or at all plaintiff delivered to the defendants in Shasta county, Cal., or elsewhere, sugar and white pine lumber, or sugar or white pine lumber, of the grades of No. 2 shop and better to the extent of 2,297,175 feet, or any greater amount of such lumber than 1,750,268 feet, and 10,493 feet in shorts. The defendants denied that by reason of the sale and delivery of the said lumber they became indebted to the plaintiff in the sum of $55,132.20, or any greater sum than $42,387.92, which latter sum, they alleged, they paid the plaintiff prior to the commencement of the action. And as a counterclaim the defendants alleged that at the time of the commencement of the action they were and still are citizens and residents of the city of Chicago, Ill., during all of which time the plaintiff was and still is a citizen and resident of Shasta county, Cal. The defendants then set up the above-mentioned written contract, and alleged that under and by virtue of its terms the plaintiff sold and delivered to the defendants, which they received, lumber as follows:

"1,750,268 feet of No. 2 shop and better; 10,493 feet of shorts. That by the terms of said contract, the said plaintiff was required to make deliveries of said lumber to the said defendants at their yards, as therein stated. That thereafter the said defendants were required, if possible, to ship said lumber within 30 days from the time it was so delivered at said yards; provided, however, that if the said defendants were unable, from any cause whatsoever, to ship said lumber within 30 days after the same was received, or any part thereof, upon a request from the said plaintiff, the said defendants were required to make an estimate of the said lumber then on hand in said yards, and not shipped, and, based upon said estimate, were required to advance to the said plaintiff a sum of money equal to the value of said lumber so on hand and unshipped, computed upon the prices fixed in said contract; provided, further, that said settlement, based on said estimate, in no event was to be considered as a final settlement, but was subject to an adjustment between the said plaintiff and defendants after a final inspection of said lumber at the time the same was shipped out of said yards by the said defendants. That in the month of January, 1906, these defendants had in their yards, as aforesaid, of the lumber delivered there by the said plaintiff, a large quantity of lumber which had not been shipped out, as contemplated by said contract. That said plaintiff, under the terms of said contract, requested that these defendants make an estimate, and, based upon said estimate, make a payment to plaintiff of the lumber so on hand. That thereupon these defendants did make an estimate, and thereafterwards, to wit, on the 12th day of January, 1906, paid to this plaintiff the sum of $20,000, based on said estimate so made in January, 1906. That prior to making the above-mentioned payment, these defendants had paid to the said plaintiff for lumber shipped out $29,364. That the total payments for lumber made by these defendants to the said plaintiff, including the payment above mentioned, made upon said estimate, amounted to the sum of $49,364. That after said lumber was all shipped out by these defendants under the terms of said contract, it was for the first time ascertained and determined that the total amount of lumber which had been delivered by the said plaintiff, and which had been received by the said defendants, under the terms of said contract, was as follows, viz.: 1,750,- 268 feet of No. 2 shop and better; and 10,463 feet of shorts. That the total liability incurred by these defendants by reason thereof to the said plaintiff amounted to and was the sum of $42,387.92."

The defendants in their counterclaim then alleged: That they made payment for the lumber delivered to and received by them at such times and in such amounts as entitled them under the terms of the contract to a deduction "of 2 per cent. off for cash," amounting to the sum of $601.09, which last-mentioned sum the defendants were and still are entitled to receive from the plaintiff. That by reason of making the payment based upon the estimate, as aforesaid, the defendants overpaid the plaintiff the sum of $6,976.08, which was paid by mistake; the defendants believing at the time the same was so paid that the indebtedness that would be due by the defendants to the plaintiff under the contract would amount to that sum. That the matter

was subject to adjustment after the final inspection of the lumber, and that, by reason of the facts pleaded by the defendants, they are entitled to have the sum last mentioned repaid to them by the plaintiff, and accordingly pray judgment therefor.

The issues thus made came on for trial before the court below without a jury, pursuant to a written stipulation, and, evidence having been introduced by and on behalf of the respective parties, the trial court made these findings of fact:

"(1) That on May 27, 1905, plaintiff and defendants entered into the contract which is set forth and attached to the complaint. That after the making of said contract, and its partial performance, the place of delivery of lumber by plaintiff was changed by the consent of plaintiff and defendants from Cottonwood, Cal., to Anderson, Cal.

"(2) That in pursuance to the terms of said contract plaintiff delivered at Anderson, Cal., and at Cottonwood, Cal., 2,779,276 feet of lumber in gross. That said lumber was delivered at various times between June 5, 1905, and November 22, 1905; the first delivery by plaintiff being made June 6th, and the last November 22d. That said lumber was delivered by plaintiff at places designated by defendants in accordance with the terms of the contract. That of said total amount delivered by plaintiff, there was a large amount of lumber of a grade below that No. 2 shop and better, California sugar and white pine. That said lumber was not sorted so that the lumber of a quality of No. 2 shop or better was separate from that of inferior quality at the time said lumber was delivered by plaintiff and unloaded at the places designated by defendants.

"(3) That defendants have shipped, of the lumber delivered by plaintiff at Anderson and Cottonwood, 1,774,648 feet of No. 2 shop and better lumber, according to the contract, of which 1,741,999 feet was loaded on railroad cars at points named, and shipped by defendants, and of which 32,649 feet was delivered by defendants from their yards to a planing mill. That said 1,774,-648 feet of lumber shipped out by defendants was graded as provided by said contract, at the time of shipment, as herein stated. That defendants also caused all the lumber delivered by plaintiff to them, to wit, 2,779,276 feet, to be graded as provided by said contract at the various times lumber was shipped by them, as hereinbefore stated, at the time of each shipment. That a large amount of the lumber delivered by plaintiff to defendants was rejected by defendant, as not being No. 2 shop or better, and was piled separately from the lumber not yet graded. That, of the lumber so rejected, plaintiff sold, to wit, 19,000 feet, to one Cunningham prior to November 9, 1905, and also sold a large number of feet to one F. W. Warren. That in pursuance to the terms of the contract, as made May 27, 1905, defendants have shipped all the No. 2 shop or better lumber which plaintiff delivered to them at Anderson and Cottonwood. That the total amount so shipped by defendants was, as hereinbefore stated, 1,774,648 feet. That the first shipment of lumber by defendants was on June 24, 1905. That the last shipment of lumber by defendants, as aforesaid, was in March, 1907. That defendants have paid plaintiff for lumber sold to them under the terms of the contract made May 27, 1905, subsequently modified, as hereinbefore set forth, $45,164. That $29,364 of this amount was paid at such times as to entitle defendants to a discount of 2 per cent. under the terms of the contract, and plaintiff allowed defendants such discount. That the total credit to which defendants are entitled is $45,765.09, being cash as stated, and a discount of $601.09.

"(4) That on or about December 20, 1905, it was orally agreed by plaintiff and defendants that a final determination and settlement of the amount and grades of lumber delivered by plaintiff to defendants, and the amount of indebtedness of defendants to plaintiff, be made, and when so determined the sum should be paid by defendants to plaintiff. That the said determination was based and was to be based on estimates of two appraisers, one appointed by plaintiff and one by defendants, in case they could agree as to the amount of No. 2 shop and better lumber then at Cottonwood in the yard known as the yard of Kelley & Co., delivered by plaintiff. That in pursuance to such oral agreement, one Clifton was orally appointed by defendants, and one

Ruff was orally appointed by plaintiff, as appraisers, and on January 11, and 12, 1906, said Clifton and Ruff made a report, after examination of the lumber delivered by plaintiff to defendants, then at Cottonwood, Cal., at the place where said plaintiff had been directed to deliver said lumber by said defendants.

"(5) That by said report and agreement of said Clifton and Ruff, it was determined that plaintiff had delivered to defendants 2,675,219 feet of lumber of various kinds. That of the lumber then at Cottonwood, at the time of the report, January 12, 1906, 449,314 feet was of lower grade than that called for by the contract, and that the total amount of No. 2 shop or better lumber, as called for by the contract, which had been delivered by said plaintiff to said defendants, was 2,225,965, and said Clifton accepted this determination as correct for defendants, and said Ruff accepted the same as correct for plaintiff. That said determination was in writing, and was evidenced by two separate sheets of paper made in duplicate; one dated January 11, 1906, purporting to be the estimate of lumber below the grades called for by the contract, then at Cottonwood, Cal., and the other dated January 12, 1906, purporting to be a summary and recapitulation of the total amount of lumber delivered under the contract, and the total amount of lumber No. 2 shop and better. That it was settled and agreed by plaintiff and defendants, by the facts hereinbefore in this paragraph stated, that plaintiff had delivered to defendants 2,225,905 feet of lumber of the grade No. 2 shop or better, according to the contract, and defendants acknowledged that such number of feet was correct, and the same was agreed to by defendants as the amount of lumber for which they were liable to pay, after deducting the just credits to which they were entitled.

"(6) That defendants, on and after January 12, 1906, were, by virtue of said estimate or determination, pursuant to said agreement of December 20, 1905, liable to pay plaintiff for 2,225,905 feet of lumber at the rate of $24 per thousand, amounting to $53,421.72. That defendants are entitled to credits of $45,765.09. That the defendants have never fully performed said agreement of December 20, 1905, and have paid plaintiff no moneys pursuant to the said agreement."

From the facts so found the court concluded as matter of law:

"That plaintiff is entitled to judgment against defendants, W. E. Kelley and Allan H. Daugharty, as copartners, for the sum of $7,656.63, and interest thereon from June 5, 1906, and costs of suit."

Judgment was entered accordingly against the defendants, who have brought the case here.

Burke Corbet, J. R. Selby, and J. F. Bowie, for plaintiffs in error.
Perry & Dailey, George O. Perry, and John J. Dailey, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the case as above). As will be seen from the foregoing statement, the plaintiff sued for the balance alleged to be due for 2,297,175 feet of California sugar and white pine lumber of the grade of No. 2 shop and better, alleged to have been delivered to and received by the defendants under and pursuant to the terms of the written contract between the parties. The trial court found as a fact (and which finding appears to be in accordance with the evidence) that, although the plaintiff delivered under the contract 2,779,276 feet of lumber at places designated by the defendants, a large amount of the lumber so delivered was of a lower grade than No. 2 shop and better and "was not sorted so that the lumber of a quality of No. 2 shop or better was separate from that of inferior

quality at the time said lumber was delivered by plaintiff and unloaded at the places designated by defendants."

The trial court further found, in effect, the facts to be that of the lumber so delivered by the plaintiff the defendants sorted out 1,774,-648 feet of No. 2 shop and better, which was all of that grade so delivered by the plaintiff, and which 1,774,648 feet the defendants shipped under the contract and paid the plaintiff therefor in full; that a large amount of the 2,779,276 feet delivered by the plaintiff was rejected by the defendants as not being No. 2 shop and better, and was piled separately; and that of the lumber so rejected the plaintiff sold 19,000 feet to one Cunningham prior to November 9, 1905, and also a large number of feet of it to one F. W. Warren.

In view of these findings of fact upon the issues raised by the pleadings, it is impossible to sustain the judgment in the plaintiff's favor, for it is a cardinal rule that a plaintiff in an action at law must recover upon the allegations of his complaint or not at all.

In view, however, of the findings in respect to the oral contract between the parties (concerning which the complaint is entirely silent), and of what was done under it, we think it proper to remand the case for a new trial, with leave to the respective parties to amend their pleadings, should they so desire.

The judgment is reversed, and the case remanded to the court below for a new trial.