# Greer, et al. v. Synod, Southern Presbyterian Church in Kentucky.

(Decided October 23, 1912.)

## Appeal from Fayette Circuit Court.

1. **Wills—Devise to Southern Presbyterian Church—In Aid of Mountain Districts of Kentucky—Creation of Fund For Fixed Purpose.**—A provision in a will that a certain sum be invested in good paying stocks, and the interest used each year in "employing evangelists for the purpose of bringing precious souls into God's kingdom—helping struggling churches and for any other purpose the Synod sees fit to use it in the Mountain districts of Kentucky," the bequest being to the treasurer of the Synod of the Southern Branch of the Presbyterian Church in the State of Kentucky, created a fund for a fixed and definite purpose to be administered by a designated trustee.

2. **Wills—Construction.**—Each phrase of the provision is to be considered in relation to the entire provision, and the general meaning of each phrase restricted by its associations; and if there is a main purpose apparent, each phrase is to be subordinated to it. The purpose of the testator is clear. He created a charity definitely fixed and certain, the doing of Kentucky Mountain evangelistic work.

3. **Wills—Charitable Gifts—Maxim of Interpretation.**—It is an established maxim of interpretation that courts look with favor on charitable gifts, uphold them when it can be done consistently with established rules of law, and protect them from assault. (See Ky. Stats., section 317.)

S. S. YANTIS for appellants.

FORMAN & FORMAN for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

The will of John M. Greenway was probated in the Fayette County Court on August 9, 1911. It contains this provision:

"I request that my wife, Harriet C. Greenway, who later I appoint executrix of this will, after paying the requests above named, to divide my estate equally between herself and the treasurer (or proper officer to receive it) of the Synod of the Southern Branch of the Presbyterian Church in the State of Kentucky. I cheerfully give this to the Synod above named, and request that it be called 'The Jno. M. Greenway Mountain Evangelistic Fund,' and that it be invested in good paying

stocks and bonds (or remain as it is invested, if it be considered safe) and the interest received therefrom to be used each year in employing evangelists for the purpose of bringing precious souls into God's Kingdom—helping struggling churches, and for any other purpose the Synod sees fit to use it in the mountain districts of Kentucky.''

The will makes no other disposition of the testator's estate, some $50,000 in amount. The testator's parents were dead. He was without bodily issue. His heirs-at-law are his nieces and nephews, the appellants. The widow takes in any event, whether under the statute, if the named clause of the will be void, or by the will, if the clause named be valid, one-half of the estate. She has no pecuniary interest in this litigation.

The heirs at law brought this action below to avoid the bequest to the Synod of the Southern Presbyterian Church, and in effect to recover for themselves the one-half of the testator's estate devised to the Synod as indicated in the quotation from the will. The case was decided against them, and they appeal. Their position is, as we understand it, that the bequest is void because it designated no definite charitable object or class of charitable objects from which a choice was authorized to be made. They concede, in effect, though not in the general nature of their argument, that had the testator gone no further than to provide that the interest from the fund devised should be used each year "in employing evangelists for the purpose of bringing precious souls into God's Kingdom" or "helping struggling churches," the charitable object would have been sufficiently indicated or defined. Their objection is to the further phrase of the will which permits the Synod to use the income from the fund "for any other purpose the Synod sees fit to use it in the mountain districts of Kentucky." Under this phrase, they argue, the Synod has a latitude in "seeing fit," to divert the benefits of the fund into purposes other than charitable—that it might use the fund for any purpose whatsoever in the mountainous section of our State. The will is susceptible of no such construction. The phrase upon which appellants rely is not to be read alone. The clause must be read as an entirety, in the ascertainment of its meaning. No particular phrase is

to be read separately. Penick, Rector v. Thom's Trustee, 90 Ky., 665. Each phrase is to be considered in relation to the entire provision, and the general meaning of each phrase restricted by its association; and if there is a main purpose apparent, each phrase is to be subordinated to it. The paragraph creating the bequest in question is the entire will of the testator here, save for the customary opening and closing formal provisions. Under this established rule of construction we must first ascertain what the testator meant—not by surmise or speculation as to what he might have done, but by what in fact he did do—and then having determined, if the will presents enough in itself to permit us to determine, what was the testator's purpose, we must then determine whether the object of that beneficent purpose be a charity which can be sustained under our statute and the declaration of our courts.

The testator's purpose is clear. He made it clear. It was to create "The Jno. M. Greenway Mountain Evangelistic Fund." That was the primary object, the doing of evangelistic work in the mountains, which he set about accomplishing. The particular mountainous section where the money was to be expended was the mountain district of Kentucky. The testator said so. He created a charity definitely fixed and certain, the doing of Kentucky mountain evangelistic work. He specified certain ways in which his general definite purpose might be carried out. He said that from the income of the fund preachers might be employed, or struggling churches might be helped. He left to the discretion of the Synod, the body which was to expend the testator's contribution to the cause of God's Kingdom, the right to select and pay out money in other channels for the propagation and maintenance of his definitely fixed charity, the doing of evangelistic work in the mountains. All channels of expenditure had to meet in this common stream. Whatever the remote origin of the outlay, it had to be tributary to, to lead down to, the general outflow for evangelistic work in the mountains. "Evangelistic is that which is designed or fitted to evangelize." An evangelist is "a bringer of the glad tidings of Christ and his doctrines" (Webster); a minister who exercises his office in the organization of church societies, and becomes the official and public

functionary in setting churches and their officers in order (16 Cyc., 817). Such was the character of the testator's eleemosynary purpose—to forward the cause of Christ in the mountains by having his doctrines preached, by having conversions to his faith and the converted brought together into congregations, thereby helping these congregations in the struggles of establishing and keeping their churches, by ''bringing precious souls into God's Kingdom'' through ''The Jno. M. Greenway Mountain Evangelistic Fund.'' It is unnecessary to invoke the aid of the *cy pres* doctrine. We apply the bounty to no particular purpose which the court might think to harmonize nearly with some indefinite general charitable aim of the testator. Upon the other hand, we seek the testator's intent from the four corners of the instrument, the universal method of will-construction, and find there the testator's purpose, clear-fixed and inescapable.

Can the testator's purpose, in the way he has appointed for its execution, and in his selection of the character of his beneficence, be supported? We are convinced that it can. The subject was one of late mediaeval legislation (43 Elizabeth), which has been brought down substantially into our own time. Kentucky Statutes, section 317. The Kentucky cases upon the subject are elaborately reviewed in Crawford's Heirs v. Thomas, et al., 54 S. W., 197, and in Spalding, &c. v. St. Joseph's Industrial School, &c., 107 Ky., 382. It is unnecessary to go over them again at length, though a few most apposite will be noticed.

In Attorney General v. Wallace's Devisees, 7 B. Mon., 611, the testator's devise of one-fourth of his estate ''to such charitable and benevolent institutions as may appear to be most useful in disseminating the Gospel at home and abroad'' was upheld as being sufficiently definite to uphold it.

In Chambers v. Baptist Educational Society, 1 B. Mon., 215, the testator devised a fund in perpetuity, the income from which ''was to be applied exclusively to the education of such Baptist preachers, or candidates for the Baptist ministry, as adhered to the articles of general union of Baptists in Kentucky, no part of it to be applied to either teachers or scholars of any other description whatever.'' The court remarked that the

testator had designated the use of the fund, and that those uses should be carried out.

In Kinney v. Kinney's Exor., &c., 86 Ky., 610, the devise was to the "Methodist Episcopal Church, South, to be applied to foreign missions, all of my property, real and personal, * * * for their use and benefit exclusively." This court said the language used in the will indicated definitely the purpose to which the testator desired his bounty to be applied.

In Crawford's Heirs v. Thomas, supra, the testator set aside a sum in perpetuity, the income of which was to be "expended in the advancement of the principles of primitive Christianity as taught by the Christian Church." Provision was made for a trustee to execute the trust. The provision was upheld.

We are unable to distinguish the foregoing cases from the one at bar. Appellants criticize some of them, and rely upon the case of Spalding v. St. Joseph's Industrial School, 107 Ky., 382, as a precedent in their favor. In that case the devise was to the Most Reverend M. J. Spalding, Archbishop of Baltimore, of all the testator's property "for charitable objects, to be expended for such objects in this diocese of Louisville, according to his discretion." This court held the will insufficient because it selected no class or individual out of the wide range of objects which could be considered charities; and because the document was no more than a power of attorney to another to make a will for the testator. This case distinguishes itself from the one at bar; for the latter involves one specific, clear and certain charity, selected by the testator himself.

It is an established maxim of interpretation that courts look with favor on charitable gifts, uphold them when it can be done consistently with established rules of law, and protect them from assault. Our statute (section 317) upholds a gift "for any charitable purpose," provided the gift points out "with reasonable certainty the purposes of the charity and the beneficiaries thereof." The purpose is certain, as we have already indicated. The citizens of our Kentucky mountains, receiving through the medium of the Presbyterian Church, are the beneficiaries. The section of our State commonly known as the mountain section is certain in its locality to those having but a superficial knowledge of its geography and citizenship. The cases which we

have discussed above indicate generally a broader field and a wider range of beneficiaries than are the ultimate recipients of the testator's bounty here. In the Attorney General's case, the beneficiaries were those who might receive the Gospel at home and abroad. In the Chambers case, the beneficiaries extended at least to a certain class of the Baptist ministry of Kentucky. In the Kinney case, the property was to be expended in that wide and ubiquitous field designated as foreign missions. In the Crawford case, the money was to be expended in the advancement of primitive Christianity the wide world over as taught by the Christian Church. In Green's Admr. v. Fidelity Trust Co. of Louisville, &c., 134 Ky., 311, the devise was to set up and maintain an institution "for the nurture, support and education of the poor infant orphans under the age of 17 years of the Free Masons of the State of Indiana." This devise was held to be sufficiently certain under our statute. In the case of Kasey v. Fidelity Trust Co., et al., 131 Ky., 604, it was held that a perpetuity created for the purpose of "distributing the Bible or Word of God to the destitute of the earth" was not too vague to be enforced. Nor is there wanting a satisfactory means of executing the trust. It was but natural that Mr. Greenway, from his long and enduring connection with the Presbyterian Church, should select it as the means of executing his evangelistic desires. It was natural that he desired the fund administered through the church to which he belonged. It was but natural that he should desire to aid it through this designated channel in carrying forward its sacred purposes. He knew that its noble history, the religious work it had done, the lives of its great ministers and lay members, its charities to orphans, its early and continued devotion to education in Kentucky, its persistence in the field in which he desired his estate to be a beneficence, evidenced its fitness to execute his desires.

We have in this case, therefore, the creation of a fund for a fixed and definite purpose, evangelistic work to be carried on in behalf of a fixed and definite set of people, those in the mountain section of Kentucky, to be administered by a designated trustee, the Synod of the Southern Presbyterian Church. The testator wrote the will in his own hand, made his purpose clear,

and disposed of the property which was his in the way in which he desired it to go. ·

The judgment of the trial court is affirmed.