**FROST NAT. BANK et al. v. BOYD et al.**

No. 11453.

Court of Civil Appeals of Texas.
San Antonio.

March 28, 1945.

Rehearing Denied May 23, 1945.

200

S. S. Searcy and Marion A. Olson, both of San Antonio, Black, Graves & Stayton, of Austin, Denman, Franklin & Denman and Johnson & Rogers, all of San Antonio, Powell, Wirtz, Rauhut & Gideon of Austin, and Carter & Lewis, Davis, Hall, Clemens & Knight, Andrew Dilworth, and Robt. G. Harris, all of San Antonio, for appellants.

Johnson & Rogers, of San Antonio, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellees.

NORVELL, Justice.

This suit was brought for the purpose of setting aside an order probating the last will and testament of Myra Stafford Pryor, deceased, and to annul certain provisions of said will. Article 5534, Vernon's Ann.Civ.Stats. The contestants were certain descendants of a brother and sister of the testatrix. They were unsuccessful in the County Court, but the District Court entered a judgment based upon a peremptory instruction, which invalidated a trust sought to be created by Mrs. Pryor in her will, as well as other provisions thereof relating to or connected with said trust.

The bases of the District Court's judgment are apparently the propositions asserted by the appellees here, i. e., (1) the provisions of the will attempting to create the trust are so indefinite that they cannot be enforced by a court of equity; (2) the will, in sofaras it relates to the trust, is not a legal testamentary disposition of property; and (3) the enforcement of the provisions of the trust would violate the rule against perpetuities. Article I, Section 26, Constitution of Texas, Vernon's Ann.St.

Appellees' propositions or contentions are more or less interrelated and may for the most part be discussed together. The case has been thoroughly briefed on both sides and an irreconcilable conflict among the American decisions upon the points here involved is disclosed. It also appears that there is no Texas Supreme Court decision which controls the disputed legal propositions raised in this case. The latest Supreme Court decision affecting a will somewhat similar in nature to that of Mrs. Pryor is Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273. In this opinion, however, the Supreme Court expressly stated that it did not decide a question which is squarely presented here. This question is largely controlling in the disposition of this case and may be stated as follows: In Texas, may a charitable trust be enforced, when the will creating the trust also authorizes the trustee to devote the trust property to any charitable purpose he (the trustee) may select?

The testatrix, Myra Stafford Pryor, was the widow of Colonel Ike T. Pryor, deceased. She died in San Antonio, Texas, on June 30, 1943, and was about seventy-nine years of age at the time of her death. The estimated value of her estate was $750,000. Mrs. Pryor sought to control the disposition of her property after death by means of a will which she executed on December 14, 1938, and a later codicil dated January 29, 1943.

Paragraph IV of the will reads as follows:

"It is my primary purpose and intent that the Trust hereby created shall be a charitable trust, and shall be and is designated the 'Myra Stafford Pryor Charitable Trust' and when the last survivor of the living persons named above as beneficiaries shall have died, it will be wholly a trust created for charitable purposes in perpetuity. Any and all net income remaining in the possession of the Trustee, after the specific payments hereinabove provided for in paragraph III of this my will have been made, shall be paid to such charitable association or associations, whether incorporated or not, as my Trustee shall in its absolute discretion select and in such amounts and at such times as my said Trustee, in its absolute discretion, may fix, to be used and applied by such association or associations so selected by my Trustee as such association or associations may deem advisable. The corpus of this Trust shall remain intact and the income alone used for the purposes of this trust."

Paragraph III of the will, as modified by the codicil, provided that certain sums per month should be paid out of the funds held by the trustee to various individuals and that upon the death of each of said individuals, "such payments shall immediately cease, and shall thereafter be applied by my trustee, as hereinafter provided in paragraph IV of this my will." The testatrix also in said Paragraph III named four beneficiaries and directed the trustee to pay to them certain specified sums annually in perpetuity, namely, the Treasurer of Saint Mark's Episcopal Church of San Antonio, Texas, the Martha Berry School at Mount Berry, Floyd County, Georgia, the Protestant Orphans' Home of San Antonio, Texas, and the San Antonio Association for the Blind. We think it reasonably appears from the record that each of the four bequests last named are comprehended within the meaning of the

term "charitable purposes," hereinafter discussed.

Mrs. Pryor, in the codicil of January 29, 1943, devised certain lands in Zavala County to her step-son, Ike T. Pryor, Jr., and made a special bequest to the Endowment Fund of St. Mark's Episcopal Church. This devise and bequest, together with the provision of the will appointing Frost National Bank of San Antonio, Texas, executor of the estate, were upheld by the District Court. The remainder of the will was stricken down, apparently, upon the theory that the remaining bequests in the will and codicil were dependent upon the trust which the District Court held invalid. There were certain other devises which had no connection with the trust, but these were made for the benefit of certain persons who were also heirs at law of Mrs. Pryor. For this reason, the District Court evidently considered that Mrs. Pryor would not have intended to prefer the designated beneficiaries over other heirs at law, had she realized that the trust which she sought to create was invalid. The effect of the District Court judgment was to decree (and the judgment so recites) that except for the devise to Ike T. Pryor, Jr., and the Endowment Fund of St. Mark's Episcopal Church, Mrs. Pryor "died intestate."

The Frost National Bank, which was designated as trustee in Mrs. Pryor's will, has signified its willingness to serve in such capacity in conformity with the provisions of the will, and here vigorously asserts the validity of Paragraph IV of the will, which relates to the "Myra Stafford Pryor Charitable Trust."

▮ In said Paragraph IV, Mrs. Pryor expressly asserted that her primary purpose and intent was to create a "charitable trust, * * * a trust created for charitable purposes in perpetuity." The term "charitable trust" has a well-recognized meaning in law. According to the American Law Institute's Restatement of the Law of Trusts (hereinafter cited as Restatement-Trusts), "a charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." II Restatement-Trusts 1095, § 348.

In American Jurisprudence it is said that:

"In a sense, all charities are trusts in that the property must be devoted to a specified purpose. There are, however, some distinctions in legal concept between a trust and the holding of property by a charitable corporation. Some cases have broadly defined a charitable trust. Any trust coming within the definition of a legal charity for the benefit of an indefinite class of persons sufficiently designated to indicate the intention of the donor and constituting some portion or class of the public is a charitable trust. It has been said that a charitable trust, in a legal sense, is one which originates from the gift and which limits property to any public use to which it is lawful to devote property forever. * * *" 10 Am.Jur. 587, § 4.

Corpus Juris Secundum states that: "A charitable trust is one the purpose or object of which is within the legal definition of the term 'charity.' * * * The terms 'public trust' and 'charitable trust' have substantially the same meaning. * * * A public charity or trust is one for the benefit of the public at large or some substantial and indefinite portion of it. * * * Public or charitable trusts are distinguishable from private trusts, on the grounds, among others, that the rule against perpetuities does not in general apply to a public or charitable trust and that uncertainty as to beneficiaries does not in general affect the validity of a public or charitable trust." 14 C.J.S., Charities, § 1, pp. 413, 414, 415.

According to the Restatement of Trusts, "Charitable purposes include (a) the relief of poverty; (b) the advancement of education; (c) the advancement of religion; (d) the promotion of health; (e) governmental or municipal purposes; (f) other purposes the accomplishment of which is beneficial to the community." II Restatement-Trusts 1140, § 368. See also, Powers v. First Nat. Bank of Corsicana, Tex. Civ.App., 137 S.W.2d 839, loc. cit. 842.

This classification of charitable purposes is similar to that given in 10 Am.Jur. 622, and 14 C.J.S., Charities, § 12, p. 440. The texts last mentioned group the fourth, fifth and sixth subdivisions of the Restatement into one category, described as "trusts for other purposes beneficial to the community not falling under any of the preceding heads." There are numerous American decisions in which it has been determined whether or not a specific object or purpose

is a charitable one within the recognized classification above set out.

■■ By applying to the terms actually used by Mrs. Pryor their well-recognized legal meaning, it will be seen that without violating the terms of the will none of the funds of the trust could be used for any other purpose than a charitable one, after the death of the individuals named as beneficiaries in Paragraph III of the will, save and except only for the purpose of compensating the trustee and payment of expenses of administration, as provided in the will. The fact that for a period of time—lives in being—a certain portion of the trust funds is applied to a non-charitable purpose does not render the trust invalid. II Restatement-Trusts 1229, § 401-i. Nor does the fact that Mrs. Pryor sought to include all six of the classifications of charity in designating permissible objects of her bounty under her will render the same unenforcible. This she sought to do by use of the term "charitable purposes."

In the Restatement of Trusts it is stated that: "A charitable trust is valid, although by the terms of the trust the trustee is authorized to apply the trust property to any charitable purpose which he may select, if the trustee is able and willing to make the selection." II Restatement-Trusts 1189, § 396.

By way of comment upon and illustration of the rule above stated, it is said that:

"If the owner of property transfers it inter vivos or by will to another person in trust for such charitable purposes as the trustee may select, and the person named as trustee is able and willing to make the selection, the charitable trust does not fail for indefiniteness. The charitable trust is valid whether the power of selection is limited to a particular class of charitable purposes, such as the relief of poverty or the advancement of education or the advancement of religion, or whether the power of selection extends to all charitable purposes." II Restatement-Trusts 1189, § 396.

"A bequeaths all his property to B in trust to dispose of it for such charitable purposes as B shall think proper. B accepts the trust and is ready and willing to apply the property for charitable purposes. A charitable trust is created." II Restatement-Trusts 1189, § 396.

Expressions somewhat similar to that of the Restatement of Trusts above quoted are contained in American Jurisprudence, Corpus Juris Secundum and Bogert on Trusts and Trustees, viz:

"If a trustee is appointed by the testator and the will shows that the object of the devise, although expressed in general terms, is for a charitable use, the trust will be declared valid." 10 Am.Jur. 644, § 83.

"It may be stated generally that the courts have uniformly dealt with the greatest liberality with charitable trusts, and much uncertainty or indefiniteness as to beneficiaries is permitted under the law; and it has been repeatedly held that a charitable trust will not be held to fail on account of any uncertainty as to the persons to whom it is to be applied, if there is someone appointed to make a selection and thereby render certain the beneficiaries who are to enjoy the testator's bounty. This doctrine proceeds upon the ground that that will be regarded as certain which can be rendered certain. When a power is conferred on the trustees to distribute the fund to members of a class, such members having certain qualifications which can be ascertained only by the exercise of judgment and discretion, as the act of distribution cannot be performed except after such ascertainment of the particular beneficiaries, the principal power to distribute the moneys carries with it the incidental and necessary power of selection. This is based upon the ordinary doctrine that when an act is authorized to be done by a trustee or other agent, every authority requisite to the doing of such act is, by intendment of law, comprised in such grant of power." 10 Am.Jur. 651, § 94.

"Gifts are not void for uncertainty as to beneficiaries where the trustee or some other person is empowered to select the beneficiaries, and ordinarily, in such cases, it is sufficient if the gift is to charities generally." 14 C.J.S., Charities, p. 477, § 40.

"There are numerous cases supporting as sufficiently definite and otherwise valid gifts to a trustee for charity in general, with authority in the trustee to select particular objects, purposes, or institutions, but with no guide furnished him as to the particular type or class of charity which the settlor desired." 2 Bogert, Trusts and Trustees, p. 1140, § 371.

We are of the opinion that the rule stated in the Restatement of Trusts should be

followed and applied in this case. There is authority to the contrary and appellees urge a number of reasons why the rule is not applicable in Texas. It is insisted that the judicial opinions which uphold charitable trusts of a general nature similar to that involved here come from jurisdictions in which the English statute of charitable uses (43 Elizabeth) has been adopted as a part of the common law or from those states which have adopted similar statutes.

Texas differs from the majority of the states in the American union in that the Texas Republic possessed a constitutional and statutory system of laws, based primarily upon the civil law at the time of the adoption of the common law as the rule of decision in 1840. The Act of 1840 (now Article 1, Vernon's Ann.Civ.Stats.) did not make the Elizabethan statute of charitable uses effective in Texas, 9 Tex. Jur. 310, § 11, but did vest the Texas judicial courts with equity powers such as were generally exercised by chancery courts under the common-law system, excepting those inconsistent with the constitution and laws of the Republic.

While various conceptions relating to the position and effect of the Elizabethan statute in the several American states, have given rise to a great contrariety of opinion, 10 Am.Jur. 643, § 83, we believe that since Mr. Justice Story's opinion in Vidal v. Girard's Executors, 2 How. 127, 11 L.Ed. 205, the generally accepted view has been that the English chancery courts exercised jurisdiction over charitable trusts prior to 43 Elizabeth.

With reference to the English statute of charitable uses, it is said in the Restatement of Trusts, that:

"The general scope of charitable purposes is indicated in the preamble to the Statute of Charitable Uses, 43 Eliz., c. 4 (1601), which enumerates charitable dispositions as follows: 'some for relief of aged, impotent and poor people, some for maintenance of sick and maimed soldiers and mariners, schools of learning, free schools and scholars in universities, some for repair of bridges, ports, havens, causeways, churches, seabanks and highways, some for education and preferment of orphans, some for or towards relief, stock or maintenance for houses of correction, some for marriages of poor maids, some for supportation, aid and help of young tradesmen, handicraftsmen and persons decayed, and others for relief or redemption of prisoners or captives, and for aid or ease of any poor inhabitants concerning payments of fifteens, setting out of soldiers and other taxes. * * *'

"Charitable trusts were enforced in the Court of Chancery in England prior to the enactment of the Statute of Charitable Uses. The validity of charitable trusts in the United States is not dependent upon the adoption in a particular State of that statute. The statute provided for the enforcement of charitable trusts by the appointment by the Chancellor of commissioners to inquire into abuses and to make orders for the redress of such abuses, which orders were to be valid until altered by the Chancellor. The statute thus provided a remedy for the enforcement of charitable trusts in addition to the existing remedies by bill in equity or information. The new remedy fell into disuse in England and was never adopted in the United States. The importance of the statute is not in its operative provisions, but merely in the description or enumeration of charitable purposes found in the preamble, and in the general intention of Parliament to favor charitable dispositions which the court deduced from the statute. The failure of any State to receive the statute as a part of its law does not affect the validity of charitable trusts in that State." II Restatement 1140, § 368.

Although the English statute of charitable uses is not in force in Texas, and we have no legislative enactment specifically dealing with charitable trusts, it does not follow that we have no recognized classification of charitable purposes. As we understand the case of Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, which cites with approval section 368 of the Restatement of Trusts, the Supreme Court of the State does recognize the generally accepted classification of charitable purposes which is similar to that given in 43 Elizabeth, but not necessarily dependent upon it. Consequently, it follows that the term "charitable purposes" has a well defined and fixed meaning in Texas, which is that generally accepted by the American states and defined by the Restatement of Trusts, American Jurisprudence and Corpus Juris Secundum, as heretofore indicated.

The English chancery courts at one time exercised a prerogative cy pres power in regard to indefinite charitable trusts, that is, in certain situations, the chancellor as the

King's representative was authorized to apply property to any charitable purpose he might select. 3 Scott on Trusts 2100, Sec. 399.1. This prerogative doctrine of cy pres is not recognized in Texas, or any other American state for that matter, although the principles of judicial cy pres, as distinguished from the prerogative doctrine are generally recognized. Inglish v. Johnson, 42 Tex.Civ.App. 118, 95 S.W. 558, writ refused. In our opinion, the fact that our equity courts do not exercise an authority similar to the prerogative cy pres power of the early English chancery courts does not render the trust here involved invalid or unenforcible for lack of certainty. The trust may be enforced without recourse to something similar to a prerogative power.

 Although appellees assert that the bases of the holdings of the courts which recognize general charitable trusts as being valid are of statutory and not common-law origin, we have concluded that the authorities do not support the proposition advanced. In our opinion the application of equitable principles recognized at common law, in reason and in logic, support a holding that the general trust for "charitable purposes" is valid. This is the view of the Restatement of Trusts as shown by the quotations above set out.

Appellees cite a number of authorities in support of their contention that Mrs. Pryor's will, insofar as Paragraph IV thereof is concerned, is not a valid testamentary disposition of property. It is asserted that "in the last analysis, the will is no will at all, but simply a power of attorney." In Tilden v. Green, 130 N.Y. 29, 28 N.E. 880, 888, 14 L.R.A. 33, 27 Am.St.Rep. 487, the New York Court of Appeals in holding that the will of Samuel J. Tilden was invalid said: "The will of the trustee is made controlling, and not the will of the testator. Such an authority is in contravention of the statute of wills. That statute authorizes a person to 'devise' his real estate, and 'to give and bequeath' his personal property, but it does not permit him to delegate to another the power to make such disposition for him."

 While the wording of the New York statute is somewhat similar to the Texas statute of wills, Article 8282, Vernon's Ann.Civ.Stats., we are of the opinion that the rule of the Tilden case does not obtain in Texas. The controlling question is whether or not, under the statute of wills,

it is necessary that the testator himself make a definite designation of the recipients of his bounty, or may he empower a trustee to make this designation. It is our opinion that where a will creates a trust and limits the use of the funds or property of such trust to charitable purposes, the will is a valid testamentary disposition of property, provided, of course, that a trustee is appointed by the will who is empowered to select the recipients of the trust funds or property and thus accomplish the purposes of the trust. Courts of those jurisdictions which hold that the testator himself must make a definite designation of beneficiaries or class of beneficiaries are presented with a further question of what is a sufficiently definite designation. To this question a great variety of answers have been given and a lack of uniformity in holdings is disclosed. In Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, 277, a trust to provide loans "to ambitious and worthy boys and girls, who are financially unable to secure an education and would otherwise be deprived thereof" was upheld. Obviously, action on the part of a trustee was necessary to make the trust effective. The principle of that is certain which may be made certain is applicable. We think that principle may as well be applied to a general trust which designates six classes of charities by use of the term "charitable purposes," as to a trust which designates one or more charitable purposes. In either case discretionary action on the part of the trustee is necessary. Without resort to arbitrary rules, it is difficult to say that in the one case the action of the trustee is not in conformity with the statute of wills, while in the other case the power authorizing him to act is a valid testamentary disposition under the statute. We hold that Mrs. Pryor's will is valid under the Texas statute of wills.

 Appellees also contend that the trust which Mrs. Pryor sought to create is invalid and should be stricken down for the reason that funds paid by the trustee to charitable associations may be used and applied "as such association or associations may deem advisable." It is argued that this wording permits the associations mentioned to use said funds for non-charitable purposes. To arrive at this conclusion it is necessary to disregard the primary intent expressed through Paragraph IV of the will, which is that funds comprising the trust estate shall be devoted to charitable

purposes. This intent must be given effect. In Powers v. First Nat. Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, the Supreme Court said: "As said in Jackson v. Phillips, supra [14 Allen, Mass., 539]: 'When a charitable intent appears on the face of the will, but the terms used are broad enough to allow of the fund being applied either in a lawful or an unlawful manner the gift will be supported, and its application restrained within the bounds of the law.' More concretely, if one construction of a will causes it to violate the rule against perpetuities while another makes it comply therewith, the latter construction will be preferred. Page, Law of Wills, vol. 2, sec. 925, p. 842. 'Public charities are public blessings, and the commonwealth is interested in giving force and effect to them.' Commonwealth v. Y. M. C. A., supra [116 Ky. 711, 76 S.W. 522, 105 Am. St.Rep. 234]. So the court's attitude in considering a bequest intended for a charitable purpose should be friendly, not hostile. Noice v. Schnell et al., 101 N.J.Eq. 252, 137 A. 582, 52 A.L.R. 965. It should 'make every reasonable effort to hold that the trust is purely charitable, and not a mixed charitable and private trust which would be invalid.' 2 Bogert, Trusts and Trustees, § 369."

In Greer v. Synod, Southern Presbyterian Church in Kentucky, 150 Ky. 155, 150 S.W. 16, 17, the testator left certain property and funds to the Synod of the Southern Branch of the Presbyterian Church "for the purpose of bringing precious souls into God's Kingdom—helping struggling churches, *and for any other purpose the Synod sees fit to use it in the Mountain districts of Kentucky.*" (Italics supplied.)

The Kentucky Court of Appeals said: "Their (appellants') objection is to the further phrase of the will which permits the Synod to use the income from the fund 'for any other purpose the Synod sees fit to use it in the Mountain districts of Kentucky.' Under this phrase, they argue, the Synod has a latitude in 'seeing fit' to divert the benefits of the fund into purposes other than charitable—that it might use the fund for any purpose whatsoever in the mountainous section of our state. The will is susceptible of no such construction. The phrase upon which appellants rely is not to be read alone. The clause must be read as an entirety, in the ascertainment of its meaning. No particular phrase is to be read separately. Penick, Rector, v. Thom's Trustee, 90 Ky. 665, 14 S.W. 830, 12 Ky. Law Rep. 613. Each phrase is to be considered in relation to the entire provision, and the general meaning of each phrase restricted by its associations; and, if there is a main purpose apparent, each phrase is to be subordinated to it."

Appellants also contend that the provisions of the will which vest "absolute discretion" in the trustee to select the charitable association or associations to which the funds shall be paid and at such times and in such amounts as the trustee shall in its absolute discretion determine, render the will void and unenforcible. It is argued that under the will the trustee may dispose of the income of the trust property for the advancement of purposes or objects which are not recognized as charitable. As above pointed out, questions of whether or not a given purpose is "charitable" is a matter of law. While the term "discretion" and "absolute discretion" may have somewhat different meaning, both imply an exercise of judgment in good faith. A trustee vested with "absolute discretion" is not authorized to act arbitrarily. He can not divert the funds of a charitable trust to non-charitable purposes without violating the terms of the instrument creating the trust and rendering himself liable for misfeasance. The court will interfere if the trustee acts in a state of mind not contemplated by the settlor. Thus the trustee will not be permitted to act dishonestly, or from some motive other than the accomplishment of the purposes of the trust, or ordinarily to act arbitrarily without an exercise of judgment." I Restatement-Trusts 489, § 187.

It is also asserted that the trust is void, as Mrs. Pryor's will provides that the income of the trust estate is to be paid to charitable associations at such times as the trustee in its absolute discretion may fix. It is said that under this provision the trustee may refuse to pay out said funds for an indefinite period of time, which may extend beyond the limitation fixed by the rule against perpetuities. The principal authority relied upon is Girard Trust Co. v. Russell, 3 Cir., 179 F. 466, 447, 448, wherein it appears that the settlor deposited certain money with the Girard Trust Company in trust to accumulate for the benefit of the State of Pennsylvania. The trustee was authorized to manage and control the trust estate until it was "equal to

the debt at that time owed by the state," at which time it was to be paid over to the State Treasurer for the purpose of discharging the debt of the State.

The court stated that: "The real question in the case is the one adjudicated by the decree of the court below, namely, whether McCay intended that the money deposited by him with the Girard Trust Company on December 18, 1848, should be an absolute immediate gift for the benefit of the state of Pennsylvania, or whether it should vest in the proposed charity when, and only when, it, with its accumulations, should equal the debt of the state."

The court held that the trust was invalid in that the interest of the beneficiary, the State of Pennsylvania, did not vest until such time as the money accumulated in the trust fund should be equal to the debt of the State.

We think it clear from the provisions of the will here involved, that the testatrix intended to devote the trust property to charitable purposes from the outset. The exercise of the discretion of the trustee as to the time when funds shall be paid to the charitable associations is in no sense a condition precedent to the dedication of the trust property to charitable purposes. The provision is one relating to administration only, which, if invalid or illegal, will not be enforced by the courts. If it be conceded that the exercise of the discretion of the trustee is an event which must take place prior to the application (as distinguished from the dedication) of the trust funds to charitable purposes, this does not render the trust invalid as being contrary to the rule against perpetuities. In the Restatement of Trusts it is said that: "If property is given in trust for a charitable purpose with a direction that the property shall not be used for the charitable purpose until the happening of an event which may not occur within the period of the rule against perpetuities, the intended charitable trust is valid if the happening of the event is not a condition precedent to the existence of the charitable trust, and if it does not appear that the settlor intended that no trust should arise unless the event should occur. In such a case the property is wholly devoted to charitable purposes from the outset." II Restatement 1230, § 401.

Appellees also advance the contention that the funds or property of the trust may, under the provisions of the will, be applied to "private charities" as well as "public charities." As above pointed out, the terms generally used in the field of trusts, in distinguishing two classes of trusts, are "private trusts" and "charitable trusts." A "charitable trust" is a "public trust." The term "charitable purposes" means the same thing as "public charitable purposes." A "charity" is a "public charity." The distinction between a "private trust" and a "charitable trust" is that the rule against perpetuities applies to "private trusts," but does not apply to "charitable trusts." A "charitable trust" must necessarily be public so that it may be said that the greater social good is realized by permitting it to stand, despite the fact that the trust property is diverted from the normal channels of trade and commerce.

The terms "private charity" and "public charity" are used in certain Texas decisions. It was pointed out in the opinion of the Court of Civil Appeals in Powers v. First National Bank of Corsicana, 137 S.W.2d 839, 842, that "the use of the term 'public charity' seems to have crept into the decisions through legislative enactments exempting from taxation institutions engaged in 'purely public charity.'" Our constitution provides that: "The legislature may, by general laws, exempt from taxation * * * all buildings used exclusively and owned by persons or associations of persons for school purposes * * * and institutions of purely public charity." Article 8, Section 2, Constitution of Texas. By referring to the case of City of Houston v. Scottish Rite Benevolent Ass'n, 111 Tex. 191, 230 S.W. 978, 980, which specifically deals with this constitutional provision and defines a "purely public charity," it may be gathered that a "private charity" is one which results from the benevolence of a donor but does not possess certain essential characteristics of a "purely public charity" as defined by the Court, namely, beneficiaries indefinite in numbers and personality who are prevented through absolute gratuity from becoming burdens to society and to the State. We think it is clear that the word "charity" in the phrase "private charity" is used in a popular sense as connoting benevolence on the part of the donor, and is not given the legal or technical meaning which it has in the general field of Trusts. In the terminology of Trusts, a "private charity" is neither a

208

"charity" nor a "charitable trust," it is a "private trust."

Appellees place much emphasis upon the case of Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223, wherein the term "private charity" was used. The controlling question in the Beggs case was the right of the Attorney General to maintain a suit to remove a testamentary trustee and for various ancillary relief. The Supreme Court held that the testamentary trust involved was not a trust for public charitable purposes only; in other words, the will did not create a "charitable trust." Consequently it was held that the Attorney General was not authorized to maintain the suit. While there are expressions in the opinion which lend some support to appellees' contentions, the controlling questions in this litigation are not the same as those involved in Allred v. Beggs. Further, the statements in said opinion upon which appellees primarily rely were not necessary to a decision of the case. Powers v. First National Bank of Corsicana, Tex.Civ.App., 137 S.W.2d 839, loc. cit. 845.

Appellees also assert that the trust provisions of Mrs. Pryor's will are void as being against public policy. We have heretofore considered certain arguments advanced in support of this contention. There remains, however, the contention that the powers conferred upon the trustee by the will are so broad and unrestricted that it would be contrary to the public good to permit the trust to stand and allow a diversion of property from the normal channels of trade and commerce to take place.

 While a legislative enactment dealing specifically with charitable trusts may be desirable to prevent certain possible abuses incident to their administration, we do not construe the will here involved as creating an instrumentality which cannot be controlled by equity in the absence of legislative action. The Attorney General may maintain a suit to enforce the trust. Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273. Although the will provides that the trustee be compensated and that expenses of administration be paid out of trust funds, these provisions can not serve as a basis for unreasonable exactions or diversion of the trust property from the purposes specified by the testatrix. In a proper suit, the trustee, if guilty of misfeasance, may be removed from his position of trust and rendered accountable for diversion of trust

funds or exorbitant exactions. Trusts are the creatures of chancery and a restricted conception of the equitable power should not be entertained so as to render the courts impotent to control them. Powers v. First National Bank of Corsicana, Tex. Civ.App., 137 S.W.2d 839, loc. cit. 843.

Finally it is asserted by cross-point that the trial court erred in not setting aside the order probating the will in its entirety. Somewhat similar points are urged against the trust feature of the will and certain provisions of the codicil. The fact situation underlying these contentions is this: The attorney who drew the will was a director of the Frost National Bank, which was appointed trustee in said instrument. He was likewise the regularly employed attorney of the bank. It appears that prior to the time Mrs. Pryor conferred with the attorney she had been advised, by a trust officer of the bank, that under the bank's schedule of charges for trust services, the cost would run about one-half of one per cent of the value of the estate per year. After discussing the matter with Mrs. Pryor, the attorney prepared a preliminary draft of the will and mailed it to her. Mrs. Pryor returned the draft to the attorney who then prepared the final draft of the will and mailed it to testatrix. The will was thereafter executed by Mrs. Pryor, in the presence of disinterested witnesses, in accordance with law.

The codicil was prepared in accordance with instructions given to the attorney by Mrs. Pryor's secretary, who was named as one of the legatees in said codicil. The final draft of the codicil was mailed to Mrs. Pryor after certain changes had been made in a preliminary draft. The codicil was executed in accordance with the formalities prescribed by law.

 The relationship between the attorney who drew the will and Mrs. Pryor was a confidential one, calling for the utmost exercise of good faith on the part of the attorney toward the client. A somewhat similar relationship existed between Mrs. Pryor and her secretary. The existence of these relationships and the fact that the attorney was also a director of the bank do not in themselves render either the will or codicil void, although a close scrutiny by the courts is indicated.

 The burden of proving the invalidity of the will or its probate in this case rested upon the appellees. Article

5534, Vernon's Ann.Civ.Stats. Appellees seemingly recognize this fact, but assert that by reason of the relationships mentioned the burden of proceeding with the evidence and demonstrating that Mrs. Pryor understood the provisions of the will and codicil devolved upon appellants. Appellees also contend that mere proof of the execution of the will and codicil is insufficient for this purpose. We must reject this contention. It is generally considered from the standpoint of policy and experience that the best proof of knowledge of the contents of a written instrument is the fact that a person alleged to have such knowledge actually signed and executed the instrument. This rule is applicable to all but the most unusual of cases. In Kelly v. Settegast, 68 Tex. 13, 2 S.W. 870, 873, it appeared that the testator was an uneducated man, unable to read or write. At the time of the making of the will he was in poor health and surrounded by those claiming benefits under the disputed will. There were circumstances raising a doubt as to the testator's having actually understood the nature of the instrument which he purportedly executed. The Supreme Court held that "in such a case we are of the opinion that it should be shown that the testator correctly understood the contents of the paper which he signed, and that the mere formal proof of the execution of the paper is not enough to entitle it to probate."

In this case there was no showing that Mrs. Pryor's mental faculties were in any way impaired, either at the time of the execution of the will, in 1938, or the codicil, in 1943. Presumedly she was fully capable of reading and understanding the terms of written instruments. Under these circumstances, we think the general rule, also set forth in Kelly v. Settegast, has application, viz:

"If a person of sound mind, able to read and write, and in no way incapacitated to acquire knowledge of the contents of a paper, by exercising the faculties he has, signs a testamentary paper, and has it witnessed as required by the statute, then, upon proof of these facts, the will ought to be admitted to probate without further proof that the testator knew the contents of the paper, unless suspicion in some way be thrown upon it; for it is to be presumed that every such man examines and knows the contents of every instrument he executes, and especially so when it is made for the purpose of disposing of his estate in the solemn form required by law in the making of wills.

"It has consequently been held that such a person need not be shown to have had knowledge of the contents of a will which he executed under the forms required by law, 'for, when the capacity of a testator is perfect, his knowledge of the contents of his will is presumed from the fact of execution.'"

In view of our holding above set forth, it is unnecessary to discuss further propositions asserted by the numerous parties involved in this litigation. We might say, however, that we are of the opinion that regardless of the question of the legality of the "Myra Stafford Pryor Charitable Trust" provided for in Paragraph IV of the will, we regard as valid the provisions of Paragraphs I and IV of the codicil, wherein Mrs. Pryor gave certain property in San Antonio, Texas, to her niece Myra Walker White and devised certain real property in Colorado County to her four grandnephews, Preston Simmons, Robert S. Simmons, Warren Simmons and Ike Pryor Simmons. These devises were not connected with nor dependent upon the trust provided for in Paragraph IV of the will. Brooker v. Brooker, 130 Tex. 27, 106 S.W.2d 247; 69 C.J. 297, § 1322.

The judgment of the District Court is reversed and the cause remanded to said Court, with instructions to enter judgment sustaining the probate of the will and codicil of Myra Stafford Pryor, deceased, and decreeing that appellees take nothing. Said Court is further directed to certify said judgment when rendered to the County Court, in accordance with the provisions of Rule 335, Texas Rules of Civil Procedure.

Reversed and remanded, with instructions to enter judgment.