CASE 108—PETITION EQUITY—DECEMBER 6.

Penick, Rector, v. Thom's Trustee.

Reynolds' Administrator v. Same.

APPEALS FROM FRANKLIN COURT OF COMMON PLEAS.

DEVISE TO CHARITABLE USES.—In construing a devise to a charitable use, the intention of the testator must be consulted just as in construing any other provision of his will; and if the real objects of the testator's bounty can be ascertained. the devise will be enforced for their benefit, and the devise will not be allowed to fail for want of a trustee or other person in whom the title may vest.

Under a devise to a trustee for "the use and benefit of the Orphans' Home of the Episcopal Church of the Ascension in Frankfort," the title to the house then called the "Home" being in the wife of the testator, and no home being devised to the church, the devise of the charity was, in effect, to needy orphan girls, children of those who had been members of Ascension Church, or such as might be adopted as deserving its care and protection; and the income of the trust fund should be expended for their benefit in such manner as will carry out the benevolent purpose of the testator, although the "Home," as it existed at his death, has been abandoned.

.A. DUVALL for appellant Penick.

Brief not in record.

W. LINDSAY, FRANK CHINN for appellees Thom and Wife.

The English doctrine of *Cy Pres* does not obtain in Kentucky. (Moore's Heirs v. Moore's Devisees, 4 Dana, 366.)

The trouble in this case is not the want of trustees, but the want of a beneficiary, and the court can not divert the fund to any other use than the support of the "Orphans' Home" named by the testator as the object of his bounty. There being no such Home, and no disposition upon the part of any one to re-establish it, and no claim that it can be re-established, we have an instance of the failure of a charitable devise, and the reversion of the fund set apart for the charitable use. (Perry on Trusts, vol. 2, sec. 726.)

Cases discussed: Moore's Heirs v. Moore's Devisees, 4 Dana, 366; Cromie's Will, 3 Bush, 365; Curling v. Curling, 8 Dana, 38; Attorney-General v. Wallace, 7 B. M., 611; Leeds v. Shaw's Adm'r, 82 Ky., 79; Kinney v. Kinney's Ex'r, 9 Ky. Law Rep., 753; Russell v. Allen, 107 U. S., 163.

D. W. LINDSEY for Reynolds' Administrator.

JUDGE PRYOR delivered the opinion of the court.

On the 29th of July, in the year 1861, the last will and testament of John H. Hanna was admitted to probate by the county court of Franklin county. That paper was executed on the 2d day of December, in the year 1858. The testator had no children, but left surviving him his widow, Mary Hanna, and two adopted children, Hunt Reynolds and his sister Catherine (now Mrs. Thom), to whom he devised the greater

portion of a large estate. He had long been a member of the Episcopal Church of the Ascension in the city of Frankfort, and by the provisions of his will made a special devise of fifty shares of stock of the Farmers' Bank of Kentucky for the benefit of the Parish School connected with that church; and also made a devise of a like number of shares of stock of the same bank for the use and benefit of the Orphans' Home of the Episcopal Church in Frankfort. This last devise is the subject-matter of the present controversy between the devisees of the testator on the one side, and E. A. Penick, the Rector of the Episcopal Church, on the other.

The devise reads as follows: "I give and bequeath unto John N. Norton, trustee and in trust, fifty shares of the stock of the Farmers' Bank of Kentucky for the use and benefit of the Orphans' Home of the Episcopal Church of the Ascension in Frankfort, and the semi-annual dividends of said stock are to be paid over to Mrs. Mary S. Hanna, to be used by her for the support of said Orphans' Home, and upon her death, then the said Norton is to designate some person to make the disbursements for the uses aforesaid."

The trustee, Norton, who was then the rector of the church, and so continued for a number of years after the death of the testator, accepted the trust and paid the funds over to the widow of the testator as directed, until her death, that took place in the year 1870. The widow, who also owned a large estate, left a last will and testament, by which, as is claimed by the appellee, she devised to her (Mrs.

Thom) the fifty shares of bank stock that had been given by her husband, the original testator, to the Orphans' Home. By the will of the husband, John H. Hanna, his wife became the devisee of all his estate that might have been omitted to be devised, or that might become a part of his estate in any way, or, to use the language of the will, "by reason of any omission, lapse, casualty, inadvertence or want of form, shall remain and vest in my wife," &c.

It is claimed by Mrs. Thom that the Orphans' Home had been abandoned, and there being now no such institution in existence to accept the charity, the bank stock passed, under the will of John H. Hanna, to his wife, Mary, under the clause referred to, and that she (Mrs. Thom) took it under the will of Mrs. Hanna as the devisee of all her bank stocks, &c. By the will of the testator the trustee, Norton, was to pay the dividends over to the widow that she might apply them during her life to this charity, and the widow, when she made her will, being desirous of enlarging the charity, and with the view of making the home more useful as a benevolent institution, dedicated the property known as the Orphans' Home to the uses of an asylum for poor orphan girls, where they could be maintained and educated until they could earn their own support, vesting the title in her nephew, Hunt Reynolds, with the provision that if no sufficient fund was raised for the support of the asylum the property was to revert to him, or he should in that event retain it as his own property. The funds were not raised, and the orphan girls, then in what was called the home, remained there until the

year 1881, under a further provision of the will of Mrs. Hanna that they were to remain in the home until they severally became of the age of sixteen. It appears, therefore, that the orphan girls who were in this home, or some of them, remained there for near eleven years after the death of the widow of the testator.

That his widow contributed more to the support of these orphans than all others is apparent, and that she was the real founder of this benevolent enterprise will be conceded, but it does not follow that because the funds necessary to maintain or enlarge this asylum as it was intended to be called and used by the testatrix were not raised, therefore the trust fund placed in the hands of the rector of the church (Norton) by the original testator passed under his will to his widow, and from the widow, by virtue of her will, to the appellee, Mrs. Thom. Norton, the trustee under the provision of the testator's will creating this trust, was directed, upon the death of his widow, to *designate some person to make the disbursement.* The rector who was invested with the title as trustee to this bank stock resided in Frankfort for many years, had control of the fund, or doubtless applied it for the uses contemplated, until the year 1881, when he died, being at the time a resident of the city of Louisville, and by the provisions of his will, and acting under what he supposed was the power conferred by Hanna's will, transferred to the present rector of the Episcopal Church at Frankfort the fifty shares of stock to be applied to the charitable use intended by the orginal testator, and in this

way E. A. Penick, the present rector of the church, is made defendant to the action, and the court below adjudging that the stock passed to Mrs. Thom, the appellee, under the will of Mrs. Hanna, he has brought the case to this court.

It is plain that neither the widow of the testator nor any of the devisees could destroy the trust reposed in the trustee, Norton, for the benefit of the orphan girls or of the Orphans' Home of the Episcopal Church in Frankfort, and while the benevolence of this Christian woman may have added more to the prosperity of the home and happiness of the orphans within it than all the other members of the church combined, still the charity is not defeated because of the failure to raise the funds necessary to found or even continue the asylum as desired by her. While the testator designates as the object of his charity the *Orphans' Home of the Episcopal Church in Frankfort*," it clearly appears that the title to the house called the home was in the widow of the testator, and no devise having been made to the church of any home, the devise of the charity was, in effect, to the orphan girls who were poor and needy children of those who had been members of that church, or such as might be adopted as deserving of its care and protection. In other words, the charity was recognized by the testator as being connected with the church, and from the members of which, doubtless, contributions were made, as the evidence conduces to establish, although his contributions and devise constituted the principal fund. The title to the building, as is alleged, is now in the devisee of Mrs. Hanna, and the fund is claimed by another

of her devisees, upon the ground that the testatrix in some way had a contingent or vested interest in it, although dying and making her will ten years before it is claimed the home was abandoned.

Why another home may not be provided, or the income of the fund expended in the support, education and maintenance of orphan girls in such manner as will carry out the benevolent purpose of the testator, we can not well see. None, in fact, exists. We say it should be applied to the orphan girls, because the means of the testator and his wife had been so applied by them while each lived to contribute, and for a period of twenty years this class of children received its benefits.

It was not the intention of the testator to make any other disposition of this fund than that contemplated by the devise. The devise became absolute and irrevocable when the will was probated, and with the title to the property in his widow he could not have supposed that this home would continue in the particular house. He may have believed, and doubtless did believe, that his widow would dedicate the building some day as a home, and this she did on certain conditions that were never complied with, but the failure of her purposes can not affect the charity of her husband. His intention was to make the fifty shares of stock a perpetual fund for the benefit of orphan girls, to be under the control of, or as an adjunct to, the church of which he had so long been a member. He invested the rector of that church with the power to appoint some one to apply the income of the fund after the wife's death, not to be used in the property

owned by her or by her devisee, but to be applied to the wants of poor orphan girls, who seem to have been made the sole object of the charity that was continued to be bestowed under the will of the testator from the year 1861, when it was probated, until the death of the trustee, Norton, in the year 1881, a period of twenty years. In the month of May, 1881, a period of less than three months after the death of Norton, the trustee, this action was filed, claiming an abandonment of the home, and that the beneficiary or beneficiaries named by the testator had no longer an existence.

That this was not a devise to orphans generally will be admitted, but that it was a devise to orphans connected with or under the care and patronage of the Episcopal Church in Frankfort, is manifest. He connects the home by the devise with this church, calling it "*The Orphans' Home of the Episcopal Church of the Ascension in Frankfort*," places it under the control of the rector of that church with the power in the latter to appoint his successor, makes a similar devise to the Parish School of that church, showing plainly the object the donor had in view, and that he regarded the beneficiaries as the orphanage of the church to which he belonged. He made no devise of the building subject to the use of the charity, but passed the title from him, because he felt assured the fund would be forever applied to those who were to receive its benefits, *and those beneficiaries were the orphans who then were, and might thereafter be, placed under the care and patronage of the Episcopal Church at Frankfort.* That the testator confided in his wife

with reference to this charity, and that it would be continued by her after his death, is not questioned, and that confidence seems not to have been misplaced. She, in fact, controlled the application of the fund as she wished, and doubtless interested other members of her church in its success; and even if it be conceded that the devise was to aid the wife in maintaining these orphan girls, it still affords no argument in favor of a construction that has, by the judgment below, rendered nugatory the most worthy of all charities.

It is insisted by counsel for the appellee that to create a home and then appoint a trustee would be the exercise of a prerogative and not a judicial power. In other words, because the donor has shown a purpose to create a charity, and it has failed, the court ought not to undertake to create one for him. It is not the benevolence of the chancellor, but that of the testator, that must be effectuated, if it can be done without resorting to some arbitrary rule. "It is an established maxim of interpretation," says Mr. Perry, "that the court is bound to carry the gift into effect if it can see a general charitable intention consistent with the rules of law;  *  *  *  but no forced construction will be adopted to uphold the gift." (2 Perry on Trusts (4th edition), section 709.) It is true that a gift may be charitable, and the chancellor without any power to enforce it, but the intention of the donor must be consulted in a case like this, as it would in construing any other provision of his will, and that he desired his bounty or charity to be distributed to the poor girls (orphans) under the control of his church, is almost as plain as if he had written it in

express words; and because he used the words, Orphans''
Home of the Episcopal Church, when the church had
no title to the home, or the house called the home·
was owned by another, and the children deprived of
its use, affords no reason for destroying this charity
that was administered by the wife and the trustee for·
twenty years to those who were the objects of the·
testator's bounty. These objects still exist, and the·
fund should be applied to their wants.

Section 2 of chapter 13, General Statutes, provides
that "no charity shall be defeated for the want of a.
trustee or other person in whom the title may vest,.
but courts of equity may uphold the same by appoint-
ing trustees, if there be none, or by taking control of
the fund or property and directing its management,.
*and settling who is the beneficiary thereof.*"

In the case of Cromie's Heirs v. Louisville Orphans''
Home Society, reported in 3 Bush, 365, it was held
that if the Society was not a legal corporation, or
incapable of holding, still the gift was, in effect, a
beneficial gift to poor orphans, and would be sus-
tained on that ground, the court, however, holding
that the corporation could take.

In this case the class of persons who are the·
beneficiaries of this fund are ready to accept its
benefits, and the rector of the Episcopal Church
in Frankfort, who was selected by the former trus-
tee, Norton, to take charge of the fund, is ready
to receive it for them. How it shall be controlled,.
or by whom the income shall be disbursed, must be
determined by the chancellor below. The vestry of
the Episcopal Church, under the advice and direction

of its enlightened and Chistian rector, who should be made the trustee, would doubtless disburse the income to such orphan girls as are poor and needy, and who are accepted as under the care and patronage of this particular church, located in Frankfort.

The judgment below is reversed, and the cause remanded for further proceedings consistent with this opinion.    The appeal of Reynolds' administrator is dismissed.