**FITZGERALD et v BELL, et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1691. Decided July 10, 1941

Roy G. Fitzgerald, Sr., Dayton; Roy G. Fitzgerald, Jr., Dayton; Thomas H. Ford, and James D. Herrman, Dayton, for plaintiff-appellees.

John H. Shively, Dayton; Oscar J. Beringer, Dayton, for George Springer Crawford.

Ellis P. Legler, Dayton; George R. Murray, Dayton, for Madeleine O'Brien Morrow.

Albert J. Dwyer, Dayton; Bessie Moore, Dayton; H. E. Beebe, Cincinnati, for Beatrice K. Bell and the estate of William H. Crawford, deceased.

Wayne F. Lee, Dayton, for Charles H. Crawford and Harriet Crawford Widner.

## OPINION

BY THE COURT:

This is an appeal on questions of law and fact from a judgment of the Probate Court.

The action is to construe the will of Mary A. Crawford, deceased, and the court found upon the one controlling question that,

"The testatrix intended to pass all of her property of every sort owned by her at the time of her death and that she did not die intestate as to any part of her estate."

The facts necessary to an appreciation and determination of the question presented are, that Mary A. Crawford executed the will under consideration on August 10, 1931. At that time, insofar as the meager evidence available discloses, her estate consisted of personal property in hand in the amount of eight to ten thousand dollars and a note against her brother, Levi S. Cunningham, in the amount of $35,000.00. As of the date of the execution of her will and at the time of her death, she had, as her next of kin, a daughter, Madeleine O'Brien, later Madeleine Crawford Morrow, two sons, William H. Crawford and George Springer Crawford. On April 26, 1934, Alice K. Fuller of Perryopolis, Pennsyl-vania (a cousin of Mrs. Crawford) died, leaving a will by the terms of which, early in February, 1935, Mrs. Crawford received $665,573.99 and also from the share which her brother, Levi S. Cunningham, took under said will, the sum of $87,390.05, being the full amount, with interest, then due on a $35,000.00 note owed by him to his sister.

Mrs. Crawford died on or about January 1. 1939, in a hospital in Greenville. South Carolina and her estate inventoried a total of $545,304.79, all of which was personal property. Since testatrix's death her son, William H. Crawford, has died, of date November 25, 1939, testate and his executor. Lee Warren James, is a party defendant. Beatrice K. Bell, defendant, is named beneficiary in the will of William H. Crawford, deceased.

Harriet Widmer and Charles H. Crawford are children of testatrix's deceased son, Charles H. Crawford, and grandchildren of the testatrix, George Springer Crawford, son of testatrix, and Madeleine Crawford Morrow are the other defendants. The plaintiffs are the executors of the last will and testament of Mary A. Crawford, deceased, whose will, insofar as germane, is as follows:

"KNOW ALL MEN BY THESE PRESENTS:

That I, Mary A. Crawford, being of sound mind and memory, hereby declare this to be my last will and testament and all former wills revoked.

**First:** I direct that all my just debts be paid, including the expenses of my funeral, which is to be simple and without ostentation.

**Second:** My daughter, Madeleine O'Brien, being well provided for, I direct that my estate, whether real, personal or mixed, except my silverware and jewelry, be divided into two equal parts. I give, devise and bequeath one of these parts to my son, George Springer Crawford, to be his and his heirs and assigns, absolutely and forever.

The other one-half part of my estate I give, devise and bequeath to The Merchants National Bank & Trust Company, of Dayton, Ohio, or to its successor, to be held by it in trust during the lifetime of my son, William H. Crawford. It shall invest and re-invest said trust estate and funds and pay to my said son, William H. Crawford, the sum of Sixty-Five Dollars ($65.00) on the first day of each month, and on the first day of April and October in each year it shall pay to my said son the additional sum of One Hundred Dollars ($100.00).

If the income from my said trust estate is insufficient to make these payments, then the necessary part of the corpus of said half of my estate may be used for this purpose. The provision for my said son may neither be assigned or encumbered and is inalienable.

My said son shall have no right, title or intest in or to the corpus of my said trust estate or in or to the income therefrom. If and in the event he should attempt to sell, assign, hypothecate, pledge or give away the income to be received by him, then my said Trustee or its successor or successors, shall have the right to refuse further payments.

My said Trustee, within three months after the death of my son, William H. Crawford, and after the payment of his funeral expenses, shall pay to my said son, George Springer Crawford or to his heirs, all of my said trust estate which shall then belong to him and/or to his heirs and assigns, absolutely and forever.

**Third:** * * * .

**Fourth:** My executors shall have full power to sell, pledge, encumber or otherwise dispose of all or any part of my estate, without appraisement, at public or private sale, and upon such terms as seem to them desirable and to make and change investments and deal as fully with the same as I could do if living.

**Fifth:** I nominate my attorney, Roy G. Fitzgerald, and my son, George Springer Crawford, executors of this will, without bond.

**Sixth:** My dear brother, L. S. Cunningham of Pittsburg, Pennsylvania, being now indebted to me in the sum of $35,000.00 and an accumulation of interest, it is my wish that, the interest being fully paid, no attempt be made to force collection of any amount of the principal within a period of one year nor, if adequate security be given, within a period of two years after my death."

It is the claim of the appellants that the will of Mrs. Crawford does not control the distribution of the after acquired legacy which came to her under the will of Alice Fuller. It is the claim of appellees that the will is completely dispositive of all of the estate of Mrs. Crawford of which she died possessed.

Many appropriate legal principles are presented and discussed at considerable length by counsel for the parties. Numerous citations in support of the respective claims are set forth and we are favored with the decision of the Probate Court which is complete and gives attention to many of the cases cited and considers and discusses in the 17 page opinion the respective theories of the parties and reaches the conclusion that Mrs. Crawford disposed of all of her estate by the terms of her will.

With the exception of the will of Alice K. Fuller, which was offered by defendants, we have set forth generally all of the evidence which was presented and admitted by the trial court.

The position of the parties respecting the admissibility of the evidence is the same in this court as in the Probate Court and upon consideration of the objections to the proffered testimony accepted and rejected, we rule in all particulars as did the trial judge.

In considering wills, it has been stated so many times as to become a truism that the pole star in construction is to determine the intention of the maker of the will. If that intention is manifest from the language employed, then

no other or further fact becomes pertinent because it is axiomatic that one may dispose of his property by will as he sees fit, so long as the disposition made is not illegal or against public policy.

In this case some of the circumstances surrounding the testatrix at the time she made her will were admitted as they might be of assistance in reaching her intention.

The intention, however, of her will is to be found in the language employed if it is plain and unequivocal and it must be gleaned from what she says and not from silence. Blatt v Blatt, (Colo.) 57 A. L. R. 221, Bond v Moore, (Ill.) 19 L. R. A. N. S., 540; Neibling v Methodist Orphans Home Association (Mo.) 41 A. L. R. 369, and it is to be considered as if it bore the date as of the death of the testatrix, 28 R. C. L. 234, 283, Oyler v Scanlon, 33 Oh St 311, Baker v Baker, 51 Oh St 222. It has been said that:

"A will is, in effect, reiterated as the instrument of the maker each moment of his life after its execution, including the last moment; and is governed by the law existing at the time when it takes effect, upon testator's death."

Re: Kopmeir, 113 Wis. 233.

There is a well settled rule of construction that a testator is never presumed to intend to die intestate as to any part of his estate. Anderson v Gibson, 116 Oh St 691; Collier v Collier's Exr's., 3 Oh St 369. At the time of the execution of Mrs. Crawford's will, §10579 GC was in effect which provided:

"Any estate, right or interest, in lands or personal estate, or other property acquired by the testator after making his will shall pass thereby, as if held or possessed at the time it was made, if such manifestly appears by the will to have been his intention."

At the time of Mrs. Crawford's death, §10504-71 GC provided:

"Any estate, right or interest, in lands or personal estate or other property of which the decedent was possessed at his decease shall pass under the will unless the will manifests a different intention."

Granted, that §10579 GC is controlling in the interpretation of the will respecting intention, as to the after acquired property, we are satisfied that it manifestly appears to have been the intention of the testatrix that such after acquired property should pass thereby.

There is no ambiguity in this will. It should be noted that all of the estate of which Mrs. Crawford died possessed was personal property. It was a settled rule of construction at common law that as to personal estate a will speaks as of the date of the death of the testator and that after acquired personal property passes under the will unless a contrary intention clearly appears. Now carried into our statute, §10504-71 GC.

The foregoing statement might appear to be in conflict with the intendment of §10579 GC but we do not so view it, because the rule of construction which we cite was employed to determine intention and as such rule clearly has application in this case, it meets the requirement of §10579 GC and it manifestly appears by the will to have been the intention of the testatrix to pass her after acquired personal property. As to the real estate, as we hereinafter point out, there can be no question that such real estate as she purposed to pass by her will, if any there should be, must have been as to after acquired realty because when it was executed she owned no real estate.

Mrs. Crawford is presumed to have known the law on this subject and that as to her after acquired personal property disposition thereof as made by her will would speak as of the time of

her death. With such knowledge, she did not change her will.

It must be granted that, insofar as the record speaks, the testatrix, when she made her will, did not have in mind that her estate as it then existed would be increased by her receipt of the large legacy from Alice Fuller and, it is likewise true, that there is no general residuary clause in the will. But a residuary clause only conveys property which has not been disposed of by the will. Upon the scheme adopted there was no necessity for a residuary clause because the whole of the estate of testatrix was disposed of by the will.

The test whether or not Mrs. Crawford intended to dispose of all of her estate by her will as of the date of her death, is not, did she have specifically in mind what she might, after the execution of her will acquire, but did she mean thereby to pass any and all property which might thereafter come to her from any source or in any manner. It may be said for the claim that the testatrix did not intend to dispose of the after acquired legacy, that in one view of the matter, it is unusual that she should permit her will to remain in terms as it was before she received the legacy but this is not enough to overcome the natural and probable effect of the language which she employed in her will.

In the second item the testatrix states, "My daughter, Madeleine O'Brien, being well provided for, I direct that my estate be divided into two parts", instead of three parts as it would have been had she made provision for Madeleine O'Brien. It is urged that Madeleine O'Brien "being well provided for", if the testatrix was leaving an estate of some $50,000.00 might not be so considered if she were leaving an estate of $500,000.00. This is true but it does not change the conclusion of the testatrix that Madeleine O'Brien was "well provided for" and that for this one reason at least, of the estate of which testatrix was disposing by her will, she desired that her daughter have no part of it.

The item continues, "I direct that my estate whether real, personal or mixed, * * *, be divided into two equal parts." This language is as broad as it could be made unless it was further stated, "which I possess at my death", which phrase is presumptively written into this will.

To more completely define that she was passing her full estate generally, having divided it into two equal parts she disposes of these parts as halves which constituted the whole or all of her estate. One-half she gives absolutely to her son, George Springer Crawford, the other half in trust for the life of her other son, William H. Crawford, to insure an annual return to him of $980.00, payable $65.00 per month and $100.00 additional on the months of April and October in each year, and it is further provided that if the income from the trust fund is insufficient to make the payments then the corpus may be employed for that purpose. The item having fixed an annuity for the son, William, sheds further light upon the reason that the payments are so restricted wherein it is set out that the trust created for the son, as to corpus or income, may neither be assigned nor encumbered and is inalienable and makes further definite restrictions upon his selling, assigning, hypothecating or giving away the income and if done the trustees are authorized and empowered to refuse further payments. This makes plain the purpose on the part of the testatrix to restrict the amount which her son, William, should have for reasons which were, to her, sufficient.

We are cited to **Wright, Admr. v Masters et, 81 Oh St 304**, wherein it was held that after acquired lands of the testator did not pass by his will under the terms of §5969 R. S., later §10579 GC. This decision in no sense conflicts with the principle which we follow because there the controlling item specifically described certain real estate, some of which was later sold, and other real estate purchased which was owned by the testator at his death. It was this last mentioned real estate

636

which provoked the law suit and upon which the court pronounced the syllabus. As Judge Crew states in the opinion, the item would not have been sufficient to have disposed of the real estate in question even had the testator possessed it at the time he made his will, for the obvious reason that by the description employed the real estate under consideration could not possibly have been included. The effect of general description of a testator's estate as accomplishing the disposition even of after acquired real estate is made the subject of an annotation to Spear v Stanley (Me.) 75 A. L. R. 498,

"The use of a generic description or general devise of all the testator's real estate is, as a general rule, held to show that testator's intent to pass after acquired real estate included in the generic description."

Supporting cases are cited from 17 states, including Ohio, and England. Bayne et v Wick et, 19 Ohio 328, is cited. It is there held,

"If the language of the testator, in a residuary clause of his will, will admit of a limited application, as well as one of a more general character, a court of equity will give it that construction which will be most favorable to the heir at law."

It is claimed that the latter part of the second item is a special residuary clause as it affects that part of the income or the corpus of the trust estate left at the death of William H. Crawford. The principle cannot be given application because clearly the trust estate as defined in the special residuary clause, if it can be so characterized, refers to the trust which has theretofore been created and is definite, consisting of "the other one-half part of my estate", the first.one-half having theretofore been bequeathed to the other son of testatrix, George Springer Crawford.

It would appear obvious that if, in view of the general, inclusive, dispositive terms employed, the testatrix had any purpose to limit the estate to that only which she possessed when the will was executed, she would have said, "my estate, whether real, personal or mixed" which I now own. Obviously, as Judge Wiseman points out in his opinion, she had no such limited disposition in mind because she then had no real estate.

It is urged that the testatrix did not make the provision for producing the annuity of $980.00, with any thought that it would come from the proceeds of the one-half of as large a sum as was represented by the Fuller legacy. Quite true and this is a moving argument but for the fact that this item and all other items in the will were in effect for years after Mrs. Crawford received the Fuller legacy. She was fully cognizant of the terms of her will, that her estate had been greatly increased and chargeable with the knowledge that, if she had not disposed of all of her property by will, the residue would pass as intestate property. the fact that she left her will unmodified lends support to the claim that she was satisfied with its terms as to who should take her estate, in what proportions, and that she did not mean to change the limitations therein.

On and after the time that she received her legacy from the Fuller estate she knew that the full amount due on the $35,000.00 note which she held against her brother had reached the sum of more than $87,000.00, all of which she had collected. It was then evident that this amount alone would in probability enable the trustees from the net income of said sum to pay her son, William, more than $980.00 per year. Inasmuch as she made no change in the provision for William, it is a permissible presumption that she desired that no change be made in the amount that he was to receive.

If she would restrict his income in amount and upon the conditions and limitations as set forth in Item II of her will, is it not reasonable to assume that she would not have permitted him to receive by intestate succession a full

share of the large Fuller legacy without any limitations whatever?

All of this is convincing that the intent of this will is to be found in the language therein employed and that the support for the claim that this testatrix did not dispose of all of her estate by her will is based almost entirely upon conjecture. In the field of conjecture many theories may be indulged but a reasonable interpretation of the language of the will alone is convincing that when it was drawn the testatrix meant that it would be dispositive of her estate, real, mixed and personal as of the date of her death, that she did not desire her daughter to participate therein and that her son, William, was to be limited in that share that he took to that which was specifically set forth and defined in Item II.

We have examined all cases cited by counsel and have discussed such of them as we believe to be at all helpful on the determinative questions.

The judgment in this court will be the same as in the Probate Court.

BARNES & HORNBECK, JJ., concur.
GEIGER, PJ., dissents.