CRAFT, EXTRX., ET, Plaintiffs-Appellees, v SHROYER, ET,
Defendants-Appellants.

Ohio Appeals, Second District, Montgomery County.

No. 1928.    Decided July 25th, 1947.

Routzohn & Nevin and Miles S. Kuhns, all of Dayton, for plaintiffs-appellees.

Baird Broomhall, Troy, and Iddings, Jeffrey, Weisman & Rogers, all of Dayton, for defendants-appellants.

## OPINION

By WISEMAN, PJ.

This is an appeal on law from the judgment of the Common Pleas Court of Montgomery County. This is an action to construe the will of Susan A. Shroyer, deceased, instituted by Sophie Craft as Executrix and the three trustees named in said will, in which the heirs-at-law of the testatrix are named parties-defendant. The will provided that the entire estate of the testatrix should be used to establish a home for full orphans of the United Lutheran Church in America of Miami County, Ohio, at her old home in said county east of Tipp City, Ohio.

The plaintiffs-appellees alleged in their amended petition that "it is impracticable and inexpedient to execute and carry out the specific terms of said trust as set forth in said will, and it is, therefore, necessary to invoke the doctrine of cy pres in order that the corpus of the trust estate may be applied to the promotion of or merged with the assets of or completely paid over to" the Oesterlen Home for Children of the United Lutheran Church in America, located in Clark County, Ohio, near the city of Springfield.

The defendants-appellants in their answer "admit that it is impracticable and inexpedient to execute and carry out the specific terms of said trust"; deny the right of the plaintiffs-appellees to have the doctrine of cy pres invoked for the reason "that said will does not create a general charitable trust, but that the devise and bequest contained therein is limited specifically and definitely to the use of the home of said testatrix as a strictly private home under the definite, specific, narrow and exclusive terms and conditions provided in said will; that, therefore, said devise and bequest and trust have lapsed and are void and have no effect; and that said property of the testatrix descends as intestate property to the defendants as heirs-at-law and next-of-kin of said testatrix."

On the issues joined the trial court took testimony on the impracticability and inexpediency of the execution of the trust, according to its terms. Evidence was also admitted relative to the organization, administration, character and location of the Oesterlen Home; that said Home is supported by the United Lutheran Church and admits children from the states of Ohio, Michigan, Indiana, Kentucky, West Virginia and Tennessee; that under its regulations children may be admitted who are not orphans or who are not affiliated with the United Lutheran Church. Testimony was also admitted showing that the testatrix, during her lifetime, taught children in the lower grades of the public schools of this community; that she was fond of children; that she was a member of the United Lutheran Church; that family differences had arisen between the testatrix and certain members of 'her immediate family which caused an estrangement.

The trial court found the will created a charitable trust; that it is impossible, impracticable and inexpedient to carry out the terms of the trust; that the purposes of said trust can be served by the Oesterlen Home at Springfield, Ohio; that the doctrine of cy pres should be invoked and that the fund in the hands of the Executrix, after the administration of said

estate is concluded, should be turned over to the Oesterlen Home of Springfield, Ohio, to be used in carrying on the work at that Home.

The defendants-appellants assign as error that the judgment is against the manifest weight of the evidence, and is not sustained by sufficient evidence; the judgment is contrary to law; the court erred in admission and rejection of evidence; and other errors apparent upon the face of the record.

The doctrine of cy pres operates in the field of charitable trusts. If the court finds that the execution of a charitable trust is inexpedient or impracticable, a court of equity will execute it, as nearly as it can, according to the original plan. **In Vol. 7 O. Jur. p. 175, sec. 38,** it is stated:

"The general principle upon which the court acts is that, if the testator has manifested **a general intention to give to charity,** the failure of the particular mode in which the charity is to be executed shall not destroy the charity; but, if the substantial intention is charity, the law will substitute another mode of devoting the property to charitable purposes, though the formal intention as to the mode cannot be accomplished." (Emphasis ours.)

See also Scott on Trusts, Vol. 3, p. 2098, Sec. 399; Restatement of the Law of Trusts, Vol. 2, p. 1208, Sec. 399; Vol. 14 C. J. S., Sec. 52, p. 514.

It is conceded that the will created a charitable trust. In the pleadings it was admitted that it would be impracticable and inexpedient to carry out the terms of the trust. Thus, the sole remaining issue was whether the testatrix manifested a general charitable intent. This was a legal rather than a factual matter. While there was evidence taken on several matters, we fail to understand how the judgment of the trial court can be attacked on the weight of the evidence as the issue drawn was legal and not factual.

Extrinsic evidence was admitted, to which the defendants-appellants interposed an objection. The trial court reserved its ruling. The record does not disclose a ruling at any stage of the case. Evidence introduced over objection is regarded as admitted and considered by the court, unless the record affirmatively shows the court sustained the objection.

It was expressly stated that this evidence was not introduced to explain an ambiguity, but rather to show the inten-

tion of the testatrix. The general rule is well established that where the language of the will is plain and unambiguous ■ extrinsic evidence is inadmissible to show intention not expressed in the will. **Townsend's Ex'rs. v Townsend, et al., 25 Oh St 477; Sommers v Doersam, 115 Oh St 139; Steinbrenner v Dreher, 140 Oh St 305. Vol. 41 O. Jur. p. 610, Sec. 478;** 94 A. L. R. p. 39 (note d.); American and English Annotated Cases, Vol. 36 (Ann. Cas. 1915 B. p. 16). However, in some jurisdictions the courts have followed the rule that when the court is in doubt or uncertain as to the true intention of the testator, as expressed by the language of the will, evidence as to conditions and surrounding circumstances may be admitted. This rule is best stated in **Vol. 41 O. Jur. p. 630, Sec. 498,** as follows:

"It may be stated that generally evidence may be received as to any facts known to the testator which may reasonably be supposed to have influenced him in the disposition of his property, and as to all the surrounding circumstances at the time of making the will. In other words, the courts do not commonly reject any evidence which in any fair view may be presumed to have a bearing upon the construction of the will."

The admission of such evidence does not do violence to the general rule. In the final analysis the court must gather the intention of the testator from the words of the will in light of the conditions and circumstances surrounding the testator at the time of the making of the will. A fine statement as to the extent to which this evidence may be considered, and the purpose of its introduction is found in American and English Annotated Cases, Vol. 36 (Ann. Cas. 1915 B. p. 11):

"It is self-evident that the words of a document are never anything but indices to extrinsic things, so that all the circumstances must be considered which go to make clear the sense of the words, — that is, their association with things. Therefore, with reference to every dispute respecting which it can be shown that a knowledge of extrinsic facts can aid in the right interpretation of the will, parol evidence of the facts and circumstances surrounding and concerning the testator, his property, and the claimants of his bounty at the time of, or prior to the time of, making the will, is admissible in evidence, not to add to, vary or contradict the meaning of the will, but to enable the court to place itself in the situation of

the testator and see things as he saw them, and to apply his language as he understood and intended it."

In **Zanesville v Zanesville, 20 Ohio 483, on p. 490**, the court say:

"If we travel out of the will, however, and take a survey of the position that the testator occupied in respect to the inhabitants of Zanesville, at the time he conceived the generous purpose of making this bequest, every doubt it seems to us must be put at rest. This the law permits us to do."

In **Lessee of Worman v Teagarden, Jr., 2 Oh St 380**, it was held that:

"In construing a will, grammatical accuracy need not be observed and it should be read with a view to the situation and circumstances of the testator in reference to the subjects of his dispositions, and the objects of his bounty.

"With these collateral aids to a correct interpretation, the will must speak for itself, and the intention of the testator be gathered from what appears on its face."

In **Bowen, Admr. v Kollar, 18 Oh Ap 10**, the court on **p. 15**, holds:

"It is proper to look not only to the language of the will, but to the facts surrounding the testator, with which he was familiar at the time of executing the will."

In **Allen, Admr., v City of Bellefontaine, 47 Oh Ap 359**, the court held:

"In determining testatrix's intention, conditions surrounding testatrix at time of execution of will, as well as phrasing of will itself, may be considered."

See also **Fitzgerald v Bell, 34 Abs 631, 634.**

However, in the instant case evidence was admitted to show family differences and discord. This evidence did not reach, and had no probative effect on the sole issue in the case, to-wit: Did the testatrix manifest a general charitable intent? On this issue this evidence was wholly irrelevant and immaterial. It should have been excluded on that ground. We are of the opinion that while this evidence was inadmissible,

it was not prejudicial and in no way controlled the judgment of the trial court in its application of the doctrine of cy pres. We find no prejudicial error in regard to the admission or the exclusion of evidence.

The defendants-appellants contend that the judgment of the trial court was contrary to law.. It is pointed out that the trial court did not find that the testatrix manifested a general charitable intent. The judgment of the court was silent with respect to a finding on this issue. However, the failure of the trial court to make such a finding would not require a reversal if the judgment in every other respect is proper.

We come to a consideration of the principal question: Did the testatrix manifest a general charitable intent? The will of the testatrix is as follows:

"I Susan A. Shroyer also known as Susie Shroyer of Bethel Township, Miami County, Ohio do give and bequeath all my real and personal property including any money which I may have at my death to be a home for full orphans of the United Lutheran Church of Miami County, Ohio. By full orphans is meant children whose father and mother are dead under the age of 18 years and who also have no stepfather or stepmother.

ITEM II. To administer the above property I hereby establish a trusteeship consisting of the minister of the First United Lutheran Church of Troy, Ohio, and the minister of the United Lutheran Church of Tipp City, Ohio and the minister of the United Lutheran Church of Brandt, Ohio. I hereby bequeath to the above named trustees the above property in trust for the purpose mentioned.

ITEM III. These trustees are to select the superintendent of the home who must be a member of the United Lutheran Church between the ages of 30 and 50 years of age. His wife is to be the matron of the home. This is to be done as soon' after my death as possible.

ITEM IV. There are to be no signs or inscriptions of any kind placed on the buildings or on the grounds. The home is to be maintained as a strictly private home at the site of my present home east of Tipp City, Ohio. The home is to be kept in good repair in every way at all times. Furnishings are to be kept intact and replaced when needed. The children are to be kept in the home until they reach the age of eighteen years. Each article of my possession is to be kept on my present property."

From the will the court must determine whether the testatrix manifested a general intention to give to charity or ex-

pressed an intention which is restrictive and exclusive, and limited to a specific purpose. A line of demarkation between the two classes of cases is not well defined. A research of authorities does not disclose any particular tests which have been applied. 2 Bogert on Trusts, Sec. 436, pp. 1307-1312. In the application of the doctrine of cy pres to a proper case, the court is permitted to change the charitable purpose and to enlarge the class of beneficiaries, or even designate an entirely new class of beneficiaries. Scott on Trusts, Vol. 3 — P. P. 2098, 2099, 2104. In such case, if the court finds that the settlor expressed a general intention to give to charity, the court will execute the purpose of the settlor as nearly as it can, according to the original plan. The theory underlying the application of the doctrine of cy pres is that the court is doing and fulfilling the will of the testator. Consequently, before the court can find, in the case at bar, that the testatrix manifested a general charitable intent, it must find that the charitable purpose expressed was general and broad enough in its scope to embrace beneficiaries not designated in the trust instrument; that the desire to make a charitable gift was primary, and would have been made in all events, and that the particular class benefited was secondary and incidental to the general charitable purpose.

In Pomeroy's Equity Jurisprudence (5th ed.) Vol. 4, Sec. 1027, p. 43, it is stated that:

"Where the donor has not expressed his charitable intention generally, but only by providing for one specific particular object, and this object cannot be carried out,"

the doctrine will not be invoked. See 2 Bogert on Trusts, Sec. 436, p. 1308.

In the instant case, it being impracticable and inexpedient to do that which the testatrix had in mind, can we discover a purpose to do something else of a similar character? We think not. There is nothing to indicate that she intended to make provision, generally, for the care of orphan children. Provision for the care of orphan children generally would seem to include a charity much broader than anything in her contemplation. It appears that the plan and scheme of administration of the trust is such an essential part of the gift that one cannot distinguish any general purpose of charity. We are obliged to hold that this mode of doing a charitable act was the only one the testatrix intended or at all contemplated.

The dominant purpose of the testatrix in the creation of the trust is expressed in the first item of her will in which she provided for the establishment of a home for "full orphans of the United Lutheran Church of Miami County, Ohio." We cannot gather a general charitable intent from this language. We must not confuse the dominant purpose expressed with a general charitable intent. In this first item of her will, in which she expresses a trust purpose, she has imposed three definite restrictions: First, the trust is restricted for the benefit of "full orphans," who are defined to be "children whose father and mother are dead, under the age of eighteen years, and who also have no stepfather or stepmother"; second, the orphans benefited must be members of, or connected with, the United Lutheran Church; third, the beneficiaries must reside in Miami County, Ohio. In our opinion, Item I, which embraces the dominent purpose for the creation of the trust, reveals a narrow, restricted and specific charitable intent rather than a general charitable intent. However, if there is any doubt as to whether the testatrix had a general charitable intent as revealed in Item I, all doubt is removed when we consider the other items of the will. The will must be construed from its four corners. The lack of a general charitable intent is reflected and emphasized in the other items of the will wherein the testatrix very definitely places restrictions on the manner in which the trust is to be administered. The testatrix very carefully selects three ministers of three United Lutheran Churches to act as trustees, and provides that the property is bequeathed to them in trust "for the purposes mentioned." The fact that she appointed three ministers of the United Lutheran Church as trustees, shows her intention to safeguard the administration of the trust for the particular and specific purpose designated. Another restriction which indicates that the intention of the testatrix was narrow and specific is found in Item III, in which she prescribes the qualifications of the Superintendent of the Home. He is required to be a "member of the United Lutheran Church between the ages of thirty and fifty years of age." Here again the testatrix shows that she has no general charitable intent. Futhermore, as if to remove all doubt about her intention, the testatrix, in Item IV, provides that "the home is to be maintained as a strictly private home" and that "there are to be no signs or inscriptions of any kind placed on the buildings or on the grounds." (Emphasis ours.)

She further provides that the home to be established shall be "at the site of my present home east of Tipp City, Ohio."

From this language we do not gather a general charitable intent, but rather an intent to provide for the establishment of a strictly private home, limited in its capacity, different in character from the traditional Orphans' Home. In support of this conclusion, we note other provisions in Item IV, in which the testatrix provides that "furnishings are to kept intact and replaced when needed." And, further, that "each article of my possessions is to be kept on my present property." Furthermore, in support of our conclusion that the intention of the testatrix was narrow and specific rather than general, we point out that she restricted the class of beneficiaries to a point where few children could qualify over a period of years. In view of the limited capacity of the home which she sought to establish, and the narrow, restricted and specific charitable purpose expressed, we can understand why she restricted the class of beneficiaries as she did.

It will serve no useful purpose to discuss at length the numerous cases cited in which the cy pres doctrine has been invoked. There are only a few reported cases in Ohio in which the question of a general charitable intent determined the issue. In Bowen, Admr., v Kollar, et al, supra, wherein a bequest was left to the Old Folks' Home for men in the city of Kansas City, Missouri, the court, on page 15, held:

"It is apparent that he did not intend that any of his property should go for the maintenance of any persons except old men, and it does not appear that any of the charities which are making claim for this fund have any provisions for separation of the funds which they control so that a portion has been, or may be, used for the benefit of women, exclusively, and another portion for the benefit of men, exclusively."

In **Ward v Worthington, et al, 28 Oh Ap 325**, where the testatrix gave her residence property to a church to be used as a parsonage for said church, and provided that the portraits of her husband, mother and daughter, and a clock, should remain in a proper place in said residence, the court, on page 334, says:

"We do not find in this will any general charitable intent. The lack of such intent is emphasized by the specific provisions relative to the family portraits."

In the case at bar the testatrix provided that her furnishings and each article of her possession should be kept intact on the property,

In Allen, Admr., v The City of Bellefontaine, et al, supra, wherein the testatrix gave her home to be used by physicians as a meeting place and for research, and as a private lying-in hospital, and at the time of the execution of her will there was in existence a local public hospital, the court, on page 371, say:

"As the Mary Rutan Hospital was in existence at the time of the execution of the will, it would appear that it was the intention of the testatrix not to adopt that hospital as the beneficiary of her bounty, but to create an institution separate and distinct from and furnishing services of a different class and character from those furnished by such hospital."

In adopting this reasoning, and applying it to the facts in the instant case, we hold that since the testatrix was a devoted member of the United Lutheran Church, and the Oesterlen Home, which is located within a few miles of her home, was in existence at the time of the execution of the will, and its work and needs were widely publicized among the members of the church, it would appear that it was the intention of the testatrix not to adopt that Home as the beneficiary of her bounty, but to create an institution separate and distinct from, and furnishing services of a different class and character from those furnished by such Home.

In **Heinlein v Elyria Sav. & Tr. Co., 75 Oh Ap 353,** where the testator in his will provided for the creation and maintenance of two small parks upon two designated plots of ground within the corporate limits of Elyria, and where the City of Elyria sought the application of the doctrine of cy pres and an order of the court to use said funds for the care and maintenance of an old and established park within the corporate limits, the court refused to invoke the doctrine of cy pres, and required the creation of the parks under the terms of the will. The court, on page 362, say:

"Suffice it to say, however, that the record before us does not show that the testator, in the giving away of his property, had a general charitable or benevolent intent. A reading of the will exhibits a clear and unqualified expressed intention to restrict his gift, and the use of particular property for a

particular specified purpose. It was no part of his plan, in the event of the failure of the charity, which he so meticulously arranged, that that part of his estate should be used in any other manner. The purpose and intent of the testator, we believe, is not left to inference or doubt. His choice of location and improvement was a vital one, and he had no secondary or broader plan."

Our search has revealed no language which can be applied with more force to the facts in the instant case than the language used by Judge Doyle in the case of Heinlein v Elyria Sav. & Tr. Co. An examination of the authorities and statements of recognized writers on charitable trusts reveals that the courts are more disposed to find a general charitable intention when the trust purpose benefits the public at large. In the case just cited the establishment of parks was for the public benefit, and yet the court found, from the language used, that there was no general charitable or benevolent intent expressed.

A consideration of a few cases in other states shows that courts of our state are in accord with the ruling which prevails in other jurisdictions. In Pennick v Thom's Trustee, 14 S. W. 830 (90 Ky. 665), where a legacy was left to a trustee for the use and benefit of "The Orphans' Home of the Episcopal Church of the Ascension in Frankfort," the court, on page 831, say:

"It was not the intention of the testator to make any (of) other disposition of this fund than that contemplated by the devise." * * * * * *

"That this was not a devise to orphans, generally, will be admitted, but that it was a devise to orphans connected with, or under the care and patronage of the Episcopal Church in Frankfort is manifest. He connects the Home by the devise with his church, calling it 'The Orphans' Home of the Episcopal Church of the Ascension in Frankfort;' places it under the control of the Rector of that church, with the power in the latter to appoint his successor."

A similar provision is found in the will of our testatrix, in which she provides that the trust shall be administered by three ministers of three congregations of the United Lutheran Church, of which she is a member.

In McBride, et al, v Murphy, et al, 124 A. 798, 14 Del. Ch. 242, where the testator gave his property to a charitable cor-

poration to be used "for the support and maintenance of the orphan girls under its care and charge," and such corporation ceased to exist before the testator's death and an effort was made to give this fund to another similar institution, the court, on page 802, say:

"In the first place there is nothing in the will which shows that the class of persons intended by the testator to be the objects of his bounty was 'female Catholic orphans of the diocese of Wilmington,' as stated by the solicitor for the defendants. It may have been and doubtless was true that the corporation named drew from this class in selecting the particular orphans whom it would maintain and support. It is stated that the testator knew this. If he did, he nevertheless chose language which confined his bounty to those only of the class who happened to be in the care and charge of the specifically named corporation. It is difficult to see how an interest could at any time have been asserted on behalf of any orphan children who were not at the time in the care and charge of this institution."

On page 803 the court say:

"It cannot make any difference whether the gift was to the charitable institution absolutely, or upon trust to use it for the benefit of the particular class of individuals to whom it administers its aid. In neither case can a general charitable intent be inferred."

In Chicago Daily News Fresh Air Fund v Kerner, 305 Ill. App. 237, 27 N. E. 2d. 310, where the testator bequeathed a part of his residuary estate to a specific charity by name, and the charity renounced the bequest, the court held the cy pres doctrine was not applicable to give the property to another charity of a similar character. The court, on page 24, approved a former opinion which held that: "General charitable intent cannot be deduced from the sole fact that the organization named in the will is engaged in a particular charitable work." The court, on page 242, in approving the former opinion, stated:

"We sustained this, saying that a general charitable intent to benefit needy boys and girls, generally, cannot be deduced from the sole fact that the Chicago Waif's Mission and Training School was engaged in charitable work for needy boys and

girls. We there said (p. 373) that the doctrine of cy pres should be applied 'if the bequest is to' a cause or for a purpose or to aid and further a plan or scheme of public benefit,' for then there is evidence of a general charitable intent. But where the gift is not to any cause, plan or scheme of charity, but to a specific or particular organization, no general charitable intent by the testatrix is indicated and the doctrine of cy pres does not apply."

In Waterbury Trust Co. v Porter, 131 Conn. 206, 38 A. 2d. 598, where the testator left the residue of his estate to trustees to establish a school or college to be operated according to a plan laid down in the will, and where the fund was not adequate to carry out this purpose and the trustees requested that the fund be used for the purpose of erecting a Trade School Building, the court held that there was no general charitable intent expressed. The court in that case had under consideration the application of the doctrine of "approximation," which was considered in the same manner as the doctrine of cy pres. The court, on page 215, say:

"It may be employed only where, upon the failure of the trust, the court finds in the terms of the will, read in the light of the surrounding circumstances, a general intent to devote the property to a charitable use to which the intent that it go to the particular purpose named is secondary."

The court, on page 216, say:

"But the restrictions he imposed, including that as to the site of the school upon his ancestral land, are couched in language too strong to be ignored. His will is, in effect, an order to carry out his educational program and none other. Because of the absence of a general charitable intent the doctrine of approximation is not applicable."

In Rohlff v German Old People's Home, 10 N. W. 2d. 686, 143 Neb. 636, where the testator made a bequest to a Home for old people of German descent, to be erected, and which was never built, the court, on page 690, say:

"It is evident to us upon an examination of plaintiff's petition, that the testator made the gift by his will for the purpose of assisting aged people of German extraction in the city of Omaha, by aiding in building and maintaining a home for

that purpose. The gift was for charity, with a narrow trust intent. The provision in the will indicates no general charitable intent."

The authorities are legion where the courts in construing wills containing trust provisions, much more general in character than in the will of the testatrix, have found no general charitable intent. When we consider the trust provisions of the will under consideration, in light of the authorities on this subject, we are led to conclude that the gift was for charity with a narrow trust intent. We cannot conceive of a will being drafted establishing a trust which would contain more restrictions and a more narrow and specific intent than that found in the will of the testatrix. In our judgment, the testatrix did not manifest a general charitable intent to aid orphans, generally, but rather expressed an intention which is restrictive, exclusive and specific in its purpose. The absence of a general charitable intent precludes the application of the doctrine of cy pres. Heinlein v Elyria Sav. & Tr. Co., supra; Bowen, Adm'r. v Kollar, supra.

Does the corpus of the trust estate descend as intestate property to the defendants-appellants as the only heirs-at-law of the testatrix? In their petition plaintiffs not only pray for the application of the doctrine of cy pres, but also for general equitable relief. Thus the general equity powers of the court are invoked. It is contended by plaintiffs-appellees that a court of equity may, to a limited extent, permit a modification of the trust in order to prevent a failure of the trust purpose. The court will order a deviation from the terms of the trust if it appears to the court that compliance with the terms of the trust is impossible, illegal, impracticable or inexpedient, or that owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust. **Findley v Conneaut, 145 Oh St 480, 486;** Restatement of the Law of Trusts, Vol. 2, page 1176, Sec. 381; Scott on Trusts, Vol. 3, Secs. 381, 399. In such cases the court applies the rule or doctrine of deviation. In Findley v Conneaut, supra, the court, on page 486, say:

"In some cases, under proper circumstances, the doctrine of deviation has been applied; in other cases, where the facts and circumstances warranted, the doctrine of cy pres has been invoked. However, the doctrine of deviation or of cy pres has been applied only in cases where exact compliance with the

provisions of the will would defeat or substantially impair the accomplishment of the purposes of the trust."

We must distinguish between the application of the doctrine of cy pres and an analogous but not as extensive a principle which permits a deviation from the terms of the trust in matters relative to the administration of the trust. See Restatement of the Law of Trusts, Vol. 2, page 1208. The cy pres doctrine is a rule of judicial construction under which the court is required to first find a general charitable intent in the instrument creating the trust; the general charitable purpose of the settlor moves the court to substitute a different charitable purpose for the one which has failed. Cy pres is applied only in the field of charitable trusts, whereas, a court of equity may order a deviation in private as well as charitable trusts. See Restatement of the Law of Trusts, Vol. 2, pages 1176, 1208. In ordering a deviation a court of equity is merely exercising its general power over the administration of trusts; it is an essential element of equity jurisdiction. In ordering a deviation the court does not touch the question of the purpose or object of the trust, nor vary the class of beneficiaries, nor divert the fund from the charitable purpose designated. **7 O. Jur. Sec. 42, p. 185.** The cy pres doctrine requires the exercise of a more extensive power than the ordinary power of a court of equity in ordering deviation. See Scott on Trusts, Vol. 3, page 2100, Sec. 399; Restatement of the Law of Trusts, Vol. 2, pages 1208, 1209. The jurisdiction merely to vary the details of the administration of a trust is more liberally exercised, more firmly established and more widely recognized than the cy pres power of the court. Vol. 14 C. J. S. page 511, Sec. 50. Thus, we are dealing here with the manner of the administration of the trust as distinguished from the purpose of the trust. As a prerequisite to the exercise of the power to order a deviation the court is not required to first find a general charitable intent.

In **Vol. 7 O. Jur., Sec. 42, p. 184,** the rule which permits a court of equity to deviate from the terms of the trust relative to its administration is stated, and in the footnote reference is made to the case of **Gearhart v Richardson, 109 Oh St 418,** where the court, on **p. 435,** say:

"We think the rule to be well established in this country, in construing charitable trusts, that if the founder thereof describes in the instrument by which he creates the charitable trust the general nature thereof and names the class of bene-

ficiaries, he may leave the details of its administration to be settled by the trustees, under the guidance of a court of equity (In re Upham Estate, 127 Cal., 90, 59 Pac., 351), and that where exact conformity to the plan of the person who has provided by his will for the charitable trust cannot be carried out in exact detail such object will be attained and duty·performed with as close approximation to the original plan as is reasonably practicable, provided the same is in conformity and consistent with the charitable purposes named by the founder; that at least, **a court of equity will not permit such charitable trust to fail because of some slight deviation or change from the original plan, if the general purpose named by the creator of the trust is still attained.**" (Emphasis ours.)

In that case the court, on page 434, stated the issue presented: "All must concede the clearness of the charitable purpose of the testator, but **the difference arises over the trust's administration.**" (Emphasis ours.)

The syllabus in that case holds that the trust would be enforced regardless of "a small change incident to the method of administration, which does not alter the purpose or object of the trust, nor vary the class of beneficiaries, nor divert the fund from the charitable purposes named by the donors." See also **McIntire's Adm'rs. et al, v City of Zanesville, 17 Oh St 352; Carr, et al, v Lane Seminary, et al, 21 Abs 107, 114.**

In the instant case the testatrix, in the first paragraph of her will, manifested very clearly her intention to create a charitable trust, the beneficiaries of which should be "full orphans of the United Lutheran Church of Miami County, Ohio. Charitable trusts have always been favored in equity, and should be given a liberal construction to carry out the intention of the testator. **The Zanesville Canal and Manufacturing Co. v The City of Zanesville, 20 Ohio 483; Urmey's Ex. v Wooden, et al, 1 Oh St 161, 164; Palmer v Oiler, Exrx., 102 Oh St 271, Gearhart v Richardson, 109 Oh St 418; Findley v Conneaut, 145 Oh St 480, 486; Graham v Bergin, 18 Oh Ap 35.** It is admitted that it is impracticable and inexpedient to administer the trust in the manner outlined by the testatrix and that due to circumstances not known to her, and not anticipated by her, compliance with the terms of the trust would substantially impair the accomplishment of the purposes of the trust. However, it is the duty of the court to maintain this trust if at all possible even though the method or plan of administering the trust must be altered. A court of equity will devise some other reasonable plan for its administration in order to carry out the intention of the testatrix.

In deviating from the plan or method outlined by the ▮ testatrix, the court is not permitted to change the charitable purpose nor divert the funds from the charitable purpose designated in the will., Scott on Trusts, Vol. 3, page 2099, Sec. 399. In the instant case we are of the opinion that a court of equity, in the exercise of a broad discretion in the administration of this trust, may make an order which will not change the original charitable purpose nor divert the funds from the charitable purpose designated in the will. In the exercise of its discretion the trial court should have made an order: Requiring the trust to be maintained for the benefit of full orphans of the United Lutheran Church of Miami County, Ohio; to require the trustees named in the will to preserve and invest the trust funds and to hold said trust funds for such trust purpose only; to expend such trust funds for the care, maintenance and support of full orphans of the United Lutheran Church of Miami County, Ohio, as defined by the will of the testatrix, during their residence in the Oesterlen Home near Springfield, Ohio, or any other similar institution, or any private home.

In the administration of the trust it may become necessary to sell the home of the testatrix which she intended should be used as a private home for such orphans, or other property in the trust. A court of equity, in the exercise of a broad discretion, may authorize the sale of such property, even though the sale is not authorized under the terms of the will. See Scott on Trusts, Vol. 3, Sec. 381, page 2044.

In our opinion the judgment of the trial court was contrary to law and is hereby reversed. We find no other error apparent on the face of the record. The court orders this case remanded to the lower court with instructions to make the order which it should have made and in conformity to the ruling and holding of this court.

MILLER, J, concurs; HORNBECK, J, concurs in judgment.